*392 OWEN, Circuit Judge:
Arete Partners, L.P. sued Rudolf Gunnerman for breach of contract and fraud in connection with a settlement agreement entered by the parties. Gunnerman appeals from the district court’s judgment finding in favor of Arete on its fraud claim, arguing that the district court erred by: (1) misapplying Texas law to find that Gunnerman had fraudulent intent; (2) finding fraudulent intent based on the facts presented; (3) finding fraud because there was no evidence of reliance; (4) calculating Arete’s fraud-based damages; and (5) awarding exemplary damages. Because the facts are insufficient to establish that Gunnerman had fraudulent intent, we reverse and remand.
I
Arete originally filed suit against Gunnerman for fraud and breach of contract related to a securities sale. The parties signed a contractual settlement before the case reached the jury. A few months later, Arete filed an amended complaint, alleging that Gunnerman breached the settlement agreement. On the day of trial, the parties once again reached a settlement to resolve Arete’s claims against Gunnerman.
The terms of the agreement were read into the district court’s record by the attorneys for the parties. Although the record reflects that there was considerable discussion and confusion as to the terms of that agreement during this process, it can, with persistence, be gleaned from that record that the parties agreed: (1) a judgment would be entered in favor of Arete against Gunnerman for $4.5 million; (2) Gunnerman would pay Arete $750,000 in cash; (3) Gunnerman would transfer 1,100,000 shares of unrestricted, fully tradeable SulphCo stock into an escrow account at Goldman Sachs, with instructions to Goldman Sachs to transfer 140,000 shares of SulphCo stock per month to Arete; (4) Arete would sell no more than 35,000 shares of SulphCo stock per week; (5) when Arete received a total of $4.5 million from the sale of stock and the $750,000 cash payment, Arete would execute a release of the judgment; and (6) if and when Arete realized $5,250,000 from the sale of SulphCo stock, Arete would transfer any remaining stock back to Gunnerman. The parties made it clear in the record that any release of the judgment did not end the contractual obligations of the parties. Gunnerman was present in court when the agreement was set forth and stated on the record that he understood the settlement and agreed to its terms.
Gunnerman timely paid Arete $750,000 in cash; however, Gunnerman never transferred 1,100,000 shares into an escrow account. Gunnerman’s counsel on securities matters informed him that the sale of SulphCo shares would trigger certain reporting requirements under the Securities and Exchange Commission’s rules. While those reporting issues were being resolved, Arete agreed to accept a wire transfer payment based on the highest closing price for the week the shares were due to be sold.
Gunnerman instructed his contact at Goldman Sachs to divide 1,100,000 shares of SulphCo stock into units of 35,000 shares, in anticipation of having the shares transferred to Arete. Gunnerman’s counsel informed Arete’s counsel that they anticipated that the shares would be transferred through physical delivery of the certificates to Arete’s counsel’s office on a weekly basis and that they were in' the process of drafting an escrow agreement to facilitate transfer of the shares. Arete objected that Gunnerman’s proposed course of action violated the agreement *393 because: (1) the transfer of restricted shares violated the promise of fully tradeable, unrestricted shares, and (2) physical delivery of shares violated the agreement to make a transfer into a Goldman Sachs escrow account. Ultimately, Gunnerman made three transfers of 35,000 shares to Arete, resulting in a transfer of 105,000 shares in total.
After Arete had sold 35,000 shares of the stock, Gunnerman offered to buy back the remaining shares that had already been transferred for the highest market price during the week of transfer. Arete agreed not to sell the stock if Gunnerman wired payment for the stock and also stated that if Gunnerman continued to deliver the 35,000 shares every week, Arete would return the certificates to him when it received payment each week. Subsequently, Arete’s counsel informed Gunnerman’s counsel that Arete had not received stock for the weeks of April 11th or May 13th. Arete’s counsel stated that Gunnerman was in material breach of the agreement, and Arete would begin the process of executing on its judgment unless Gunnerman wired $350,000 to Arete’s account. A few days later, Arete’s counsel sent an email to Gunnerman’s counsel with the subject “Got your message”: “I believe that we are still behind one week. I do not believe we got stock for the week of April 11. Send the money everyweek [sic] for the highest prices will work great. But we need to get the money for week one.” Gunnerman’s counsel responded, “Ok. I spoke with Stan to confirm.”
As a result of this communication, the district court found that the parties modified their agreement, and neither party disputes that finding on appeal. Under the modified agreement, in lieu of stock transfers, Gunnerman agreed to wire transfer cash to Arete at the end of each week, calculating the amount based on the highest closing price for SulphCo stock for that week. Although a formal draft of the parties’ amendment to their settlement agreement was prepared, it was never signed. Following the parties’ agreement, Gunnerman made cash payments of varying amounts, although the amounts did not appear to bear any particular relation to an identifiable method of calculating Gunnerman’s obligations to Arete. The parties continued to dispute both the timing and the amounts of Gunnerman’s periodic cash payments.
After the payments stopped altogether, Arete filed this suit against Gunnerman, alleging causes of action for breach of contract and fraud. In response, Gunnerman filed a motion to release the $4.5 million judgment, even though it was undisputed that payments toward satisfaction of that judgment had not reached its full amount. At the time of trial, the total consideration in both cash and stock provided to Arete by Gunnerman was $4,390,390.71, which was the sum of: (1) the initial $750,000 cash payment; (2) the actual proceeds of the 105,000 shares of SulphCo stock sent to Arete by Gunnerman; and (3) the total of the wire transfer payments made in lieu of Gunnerman’s stock transfer obligations.
In a bench trial, the district court found in favor of Arete on its causes of action for breach of contract and fraud. The district court noted that Gunnerman had essentially conceded each of the elements of Arete’s breach-of-contract claim, and the only dispute on this claim was the proper measure of damages. The district court also found in favor of Arete on its fraud claim. The court found that Gunnerman never intended to keep two distinct promises to Arete: “Gunnerman never intended to permit Arete to realize more than $4.5 million and never intended to perform the agreement to transfer 1,100,000 shares.” The court concluded that the difference between the *394 amount Arete received and what it would have received if Gunnerman had performed the modified agreement as promised was $1,060,649.27. The court found that Arete was entitled to this amount as actual damages under both its fraud and breach-of-contract causes of action. Furthermore, because the district court found that Arete’s damages were the result of fraudulent promises by Gunnerman, the district court found that Arete was entitled to $500,000 in exemplary damages in addition to its actual damages. Alternatively, the district court found that Arete was entitled to actual damages plus attorneys fees under its contract claim. Arete was required to make an election between these two alternative measures of recovery before the entry of judgment; Arete elected recovery based on its fraud claim, and the district court entered judgment.
Gunnerman subsequently filed a motion to amend the judgment and the court’s findings of fact and conclusions of law, arguing that the district court had incorrectly found that Gunnerman had fraudulent intent when he entered into the settlement agreement. The district court rejected Gunnerman’s arguments and denied the motion. Gunnerman then filed this appeal.
II
On an appeal from a bench trial, we review the district court’s legal determinations de novo and its factual findings for clear error.[1] We will find clear error if (1) the findings are without substantial evidence to support them; (2) the court misinterpreted the effect of the evidence; or (3) although there is evidence which, if credible, would be substantial, the force and, effect of the testimony, considered as a whole, convinces the court that the findings are against the preponderance of credible testimony.[2]
Ill
On appeal, Gunnerman argues that, in finding fraudulent inducement, the district court incorrectly applied Texas law and its factual findings were in clear error. Under Texas law, “[a] fraud cause of action requires a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury.”[3] A promise to do an act in the future is an actionable misrepresentation when made with the intent to deceive and with no intention of performing the act.[4] A party’s intent is determined at the time the party made the representation; however, a party’s intent may be inferred by the party’s subsequent acts following the representation.[5] “Failure to perform, standing alone, is no evidence of the promissor’s intent not to perform when the promise was made. However, that fact is a circumstance to be considered with other facts to establish intent.”[6] Even “slight circumstantial evidence of fraud, when considered with the breach of promise to *395 perform, is sufficient to support a finding of fraudulent intent.”[7] The evidence must be relevant to the defendant’s intent at the time the representation was made.[8] “Courts have held a party’s denial that he ever made a promise is a factor showing no intent to perform when he made the promise.”[9] The Supreme Court of Texas has also noted that “[u]sually, successful claims of fraudulent inducement have involved confessions by the defendant or its agents of the requisite intent.”[10]
Gunnerman first argues that the district court incorrectly applied Texas law to find that Gunnerman had the requisite fraudulent intent. Gunnerman maintains that the district court committed an error of law by applying the Texas Supreme Court’s decision in Spoljaric v. Percival Tours, Inc.,[11] rather than its decision in Miga v. Jensen.[12] Spoljaric held that “[a] promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act.”[13] In Miga, the Texas Supreme Court concluded that there was no evidence to support the jury’s finding of fraud and held that a “dispute at trial over the contract’s terms [was] not evidence that Jensen did not intend to perform” at the time he entered the contract.[14] The court held that this was “a classic breach of contract case” and that the wronged party had “no cause of action for fraud.”[15]
Gunnerman misapprehends the court’s decision in Miga. Miga did not supplant Spoljaric; instead, Miga is an application of the legal principles discussed in Spoljaric. The court held in Miga that the parties’ dispute over contractual terms at trial was insufficient evidence that a party did not intend to perform. In other words, the evidence was insufficient to satisfy the test for fraudulent intent as set forth in Spoljaric. Here, in order for Arete to recover under its fraud claim, Arete was required to prove that Gunnerman entered into the settlement agreement “with the intention, design and purpose of deceiving, and with no intention of performing the act.”[16]
Gunnerman contends that there is no evidence of fraudulent intent. The district court found that “[t]he evidence of record establishes Gunnerman never intended to keep two distinct promises to Arete: (1) that Arete would have the opportunity to sell 1,100,000 shares of SulphCo stock; and (2) that Arete could achieve a maximum recovery of $5.25 million as proceeds on the sale of SulphCo stock.” The district court based its finding of fraudulent intent on two factors: (1) Gunnerman’s interpretation of the settlement agreement, and (2) Gunnerman’s “pattern of malfeasance.”
As a matter of law, the district court held that the parties had agreed that Arete would have the opportunity to realize $6,000,000 from (1) Gunnerman’s payment of $750,000 together with (2) the sale of 1,100,000 shares of stock. Gunnerman testified that his understanding of the agree *396 ment differed from the district court’s. Gunnerman stated that although he understood that Arete would have the opportunity to realize $6,000,000 from the sale of stock if the market price were high enough, he thought that his payment of $750,000 was to be credited toward his obligation to transfer 1,100,000 shares of stock.
The district court found Gunnerman’s interpretation of the parties’ agreement to be “inconsistent and unbelievable” and that Gunnerman’s position “was entirely fabricated after the fact.” The court noted,
When the agreement was originally dictated into the record ..., there were clearly two separate obligations undertaken by Gunnerman — one for the payment of cash and one for the transfer of stock. The cash-stock equivalency issues never appeared until Gunnerman refused to transfer the stock to Goldman Sachs, as required under the original agreement.
The court found that “Gunnerman never intended to permit Arete to realize any more than $4.5 million and never intended to perform the agreement to transfer 1,100,000 shares” and that “Gunnerman used the modification [to a cash-based transaction] to create a colorable basis for his alleged confusion over the total amount of his obligations to Arete.” In its order denying Gunnerman’s motion to amend the judgment, the court also found that “Gunnerman’s so-called interpretation of the parties’ agreement was so facially merit-less and self-serving that, for the purposes of ascertaining fraudulent intent, it was the equivalent of a denial that he ever made the agreement with Arete.”
We note that there was a possibility that Arete could have realized a total of $6,000,000 under the modified settlement agreement if the market price of the stock for which Gunnerman did make payment had been higher. But even if Gunner-man’s testimony as to his understanding of the agreement is at odds with the agreement’s actual terms, there is insufficient evidence of intent to defraud at the time the agreement was made.
As noted, in Miga v. Jensen, the Texas Supreme Court held that a dispute over contract terms at trial was not evidence that the defendant did not intend to perform: “Jensen’s conduct after Miga’s resignation in 1994 and his dispute at trial over the contract’s terms are not evidence that Jensen did not intend to perform when he offered Miga the PGE option in 1993. This is a classic breach of contract case; Miga has no cause of action for fraud.”[17] In Miga, Jensen orally granted an option to Miga to purchase 4.8% of Jensen’s interest in a corporation for a specific price.[18] About eighteen months later, Miga resigned and attempted to exercise the option.[19] Jensen presented Miga with a written agreement that was to be a “ ‘complete accounting,’ ” but it did not explicitly release Miga’s option.[20] Miga agreed to the terms of the termination agreement, but on the same day, he attempted to exercise the option and Jensen refused to perform.[21] Miga sued for breach of contract and fraud. At trial, Jensen contended that the option had been for a “sealed price,” was subject to a buyback if Miga resigned, and was released by the termination agreement the parties *397 reached when Miga resigned.[22] The jury found against Jensen and for Miga on all issues, including fraud.[23] The Supreme Court of Texas held there was no evidence that Jensen did not intend to perform at the time he granted the option.[24] That court explicitly rejected the argument that Jensen’s disagreement about the option’s terms “was tantamount to a denial of the option agreement that the jury found he made.”[25]
The facts of the present case are indistinguishable from those at issue in Miga. Although the district court recognized that “a good faith difference in interpretation over the meaning of a particular contract provision is not evidence of fraudulent intent,” it attempted to distinguish Miga based on a finding that Gunnerman’s testimony regarding his understanding of his obligations under the original agreement was knowingly false. The district court reasoned that “when a defendant puts forward a self-serving, facially meritless interpretation of a contract, the effect of which would be to relieve the defendant of some or all of his obligations under the contract, the interpretation is effectively the same as a denial that an agreement was ever made.” This is contrary to Texas authorities. To uphold a fraud finding on such a basis would permit a factfinder to find fraud simply by disbelieving that a party’s interpretation of an agreement was offered in good faith belief of its correctness. In other words, fraud could be based solely on a credibility determination when a witness testified as to his or her understanding of the terms of an agreement. The Texas Supreme Court held otherwise in Miga.
The district court’s conclusion is also contrary to the approach taken by the Texas Supreme Court in Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc,[26] In that case, Formosa had represented in a bid package it submitted to Presidio and in the construction contract the two parties subsequently signed that Presidio would have control over concrete deliveries.[27] Formosa’s interpretation of its obligations under the contract in this regard was contrary to the “specific[ ] and unequivocal]” terms of the contract and “even Formosa’s own witnesses admitted that, under the plain language of the contract, Presidio had control over the scheduling and delivery of concrete.”[28] However, the court based its determination that there was “legally sufficient evidence that Formosa made representations with no intention of performing as represented” not on this evidence but on direct evidence from a Formosa employee that, contrary to the representation in the bid package it submitted to Presidio and two weeks before the contract was signed, Formosa decided “to take over the delivery of the concrete without informing Presidio”; Presidio was not informed of this decision until after the contract was signed; and a Formosa employee testified that “Formosa acted deceptively by taking over the concrete delivery and scheduling when the bid package expressly provided that the contractor would have control,” and “that Formosa knew that Presidio would rely on this representation in preparing its bid.”[29]
*398 Even though the district court found Gunnerman’s interpretation to be contrary to the plain terms of the agreement, Gunnerman’s interpretation of the agreement, standing alone, is not evidence of fraudulent intent. The district concluded that “Gunnerman used the modification [to a cash-based transaction] to create a color-able basis for his alleged confusion over the total amount of his obligations to Arete.” But here again, there is no evidence that at the time the parties agreed to modify their settlement agreement, Gunnerman had no intention of performing and intended that Arete rely to its detriment on the modified terms.
In its order denying Gunnerman’s motion to amend the findings of fact and the judgment, the district court stated that it also found “Gunnerman’s pattern of malfeasance to be persuasive evidence of Gunnerman’s fraudulent intent,” pointing to Gunnerman’s alleged breach of an earlier settlement agreement in connection with this litigation. The district court is clearly entitled to assess Gunnerman’s credibility based on Gunnerman’s “pattern of malfeasance.”[30] However, Gunnerman’s conduct during pre-trial proceedings and his prior alleged breach of a settlement agreement is not sufficient evidence to show that Gunnerman did not intend to perform the settlement agreement at issue here. In a jury trial, generally we would not permit a party to introduce as evidence of fraud in the inducement the history of prior suits and settlements between the parties, discovery skirmishes or possible discovery abuses, or pre-trial conduct that was displeasing to the trial judge. The same standards apply in a bench-tried case. Although sanctions for conduct during discovery and other pre-trial proceedings may be warranted in some circumstances, Gunnerman’s conduct is not evidence of fraudulent intent at the time that he reached the original or modified settlement agreement with Arete, and imposition of punitive damages for any such conduct is impermissible.
Because the' evidence is insufficient to support a finding of fraud, we do not reach Gunnerman’s remaining arguments regarding reliance and the proper measure of fraud damages.
For the foregoing reasons, we REVERSE and VACATE the district court’s award of actual and exemplary damages based on Arete’s fraud claim, and we REMAND to allow Arete to elect recovery under its breach-of-contract claim.

. Rabo Agrifinance, Inc. v. Terra XXI, Ltd., 583 F.3d 348, 352 (5th Cir.2009).

. Bd. of Trs. New Orleans Employers Int’l Longshoremen’s Ass’n, AFL-CIO Pension Fund v. Gabriel, Roeder, Smith & Co., 529 F.3d 506, 509 (5th Cir.2008).

. Formosa Plastics Corp. USA v. Presidio Eng’rs & Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 199 8) (internal quotation marks omitted).

. Id. at 48.

. Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 434 (Tex.1986).

. Id. at 435.

. Id. (internal quotation marks omitted).

. Formosa Plastics, 960 S.W.2d at 48.

. Spoljaric, 708 S.W.2d at 435.

. Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 305 (Tex.2006).

. 708 S.W.2d 432 (Tex.1986).

. 96 S.W.3d 207 (Tex.2002).

. 708 S.W.2d at 434.

. 96 S.W.3d at 211.

. Id.

. See Spoljaric, 708 S.W.2d at 434.

. 96 S.W.3d at 211.

. Id. at 209.

. Id.

. Id.

. Id.

. Id.

. Id. at 209-10.

. Id. at 210-11.

. Id. at 210.

. 960 S.W.2d 41, 48 (Tex.1998).

. Id.

. Id.

. Id. at 48-49.

. See Fed.R.Civ.P. 52(a)(6) ("[T]he reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility-”)-