# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 3, 2013

Lyle W. Cayce
Clerk

No. 12-20102

JOHN D. CLAYTON,

Plaintiff-Appellant,

v.

CONOCOPHILLIPS COMPANY; WACHOVIA BANK, NATIONAL
ASSOCIATION; JAMES D. MCMORRAN; THE AMENDED AND
RESTATED BURLINGTON RESOURCES, INCORPORATED EMPLOYEE
CHANGE IN CONTROL SEVERANCE PLAN,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and DAVIS and CLEMENT, Circuit Judges.

CARL E. STEWART, Chief Judge:

Plaintiff-Appellant, John D. Clayton brought suit against Defendants-Appellees, ConocoPhillips Co. ("Conoco"); Wachovia Bank, N.A. ("Wachovia" or the "Trustee"); James D. McMorran; and The Amended and Restated Burlington Resources, Inc. Employee Change in Control Severance Plan (the "Plan").[1]

---

[1] Wells Fargo Bank, N.A. acquired Wachovia and assumed its role as Plan Trustee. For simplicity, we use the defined term "Wachovia" to refer to both banks without distinction. The parties and the district court have used the terms "Trustee" and "Administrator" indiscriminately. We use the term "Trustee," except when directly quoting a source that already used "Administrator." McMorran was Conoco's Manager of Global Compensation and Benefits during the events at issue in this case.

No. 12-20102

On July 2, 2010, the district court granted summary judgment to Conoco, Wachovia, and McMorran.  On January 20, 2012, the district court granted summary judgment to the Plan and entered final judgment against Clayton.

For the reasons provided below, we AFFIRM the district court's final judgment in full.

## I. BACKGROUND

### A.    Facts

#### 1.    The Pre-Merger Period

In 1986, Clayton began work as a staff petroleum engineer for Meridian Oil Inc., a corporate predecessor to Burlington Resources, Inc. ("Burlington"). On March 31, 2006, Burlington merged into Conoco, a significantly larger company.  By the time of the merger, Clayton had risen within Burlington to become its company-wide Director of Worldwide Acquisitions and Divestitures ("A&D").

#### 2.    The Plan

Burlington enacted a severance plan, which would provide benefits to Burlington employees who experienced a termination of employment, caused by a change in corporate control, within two years of that change.  *See* Plan § 4.1(a) (explaining the "Right to Severance Benefit").  The Plan covered resignation for "Good Reason," as defined by Plan § 2.12.[2]  Wachovia served as Trustee of the

---

[2] The pertinent provisions of Plan § 2.12 state:

> "Good Reason" shall mean the occurrence of any of the following events or conditions:
>
> . . .
>
>    (b) a reduction in the Participant's annual base salary or a material reduction in benefits provided employees immediately prior to the Change in Control;
>
> . . .
>
>    (e) a change in the Participant's position or responsibilities which represents a substantial reduction of the Participant's position or responsibilities immediately prior thereto. . . .

Plan. Upon completion of the merger, Conoco assumed responsibility for Burlington's obligations under the Plan.

### 3. The Offer Letter and Waiver

For approximately three months preceding consummation of the merger, Clayton participated as a member of the Conoco/Burlington "Integration Leadership" team. In that role, he specifically worked on future business development strategy for the soon-to-be integrated company.

On March 14, 2006, Conoco presented Clayton a written offer (the "Offer Letter") to become its post-merger "Mgr. of A&D" within its "U.S. Lower 48, Exploration & Business Development" Organization. Other than providing his title and department, the Offer Letter did not provide a specific, written job description.

Conoco's offer was contingent upon Clayton's execution of a written waiver and release (the "Waiver") to any entitlement to severance benefits under the Plan "as a result of" the merger. Conoco included the Waiver as the final page of the Offer Letter. The Waiver did not extend to Clayton's entitlement to severance benefits under the Plan due to specified events or conditions "in the future."

Clayton executed the Waiver six days after receiving it, on March 20, 2006. At the time, his severance benefits under the Plan were worth approximately $600,000.

### 4. The Post-Merger Period

Shortly after the merger, Conoco reassigned Clayton to the role of "Manager of Business Development." The key difference between "A&D" and "Business Development" is that the former concerns properties already yielding petroleum output, while the latter concerns properties that remain in the exploratory or developmental stage.

No. 12-20102

Thus, whereas in his prior role, Clayton directed all acquisitions and divestitures of petroleum-producing properties throughout the world for a smaller company; in his new role, Clayton managed one department's acquisitions and divestitures of properties in the developmental or exploratory stage within the continental United States for a much larger company. This metamorphosis is at the heart of the parties' dispute.

## B.     Proceedings

### 1.     Clayton's August 2006 Claim to Conoco Human Resources

Clayton became disgruntled with his new, post-merger role as early as June 2006. He filed an initial claim on August 8, 2006, seeking severance benefits for resignation for "Good Reason" pursuant to Plan § 2.12(e).[3] McMorran denied Clayton's claim on September 25, 2006 because Clayton had not resigned his position with Conoco.

Notwithstanding his August 2006 claim, Clayton continued working at Conoco until March 2008. Clayton gave notice of his resignation on March 4, 2008, and officially terminated his employment on March 18, 2008.

### 2.     Clayton's March 2008 Claim to the Trustee

On March 4, 2008, the same day he gave notice of his resignation, and less than one month before the two-year deadline for filing a timely claim, Clayton filed a renewed claim for severance benefits under Plan § 2.12(e).

In a written decision issued July 14, 2008, the Trustee denied Clayton's renewed claim. Comparing the job Clayton actually performed after the merger with the job Clayton accepted in the Offer Letter, the Trustee determined that Clayton had not experienced a substantial reduction in his job position or responsibilities. Thus, Clayton had not resigned for "Good Reason."

---

[3] Clayton erroneously filed his claim with Conoco Human Resources rather than with the Trustee.

No. 12-20102

### 3.     Clayton's State Court Claim and Conoco's Removal to Federal Court

Clayton filed suit in Texas state court in October 2008, asserting claims against Conoco for breach of the Offer Letter and breach of its obligations under the Plan.

Conoco removed on "complete preemption" grounds.  Specifically, Conoco argued that Clayton's claim was "necessarily federal in nature" in light of the civil enforcement provision of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), and therefore was "completely pre-empted." *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 220-21 (2004); *Arana v. Ochsner Health Plan*, 338 F.3d 433, 439-40 (5th Cir. 2003) (en banc).

Clayton moved for remand, noting that ERISA only covers plans that require "an ongoing administrative program to meet the employer's obligation." *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987).  He argued that, under this Circuit's precedent, the Plan does not require "an ongoing administrative program" and, therefore, that ERISA does not cover the Plan.

The district court denied Clayton's motion on March 23, 2009, holding that the Plan does require "an ongoing administrative program."  Thus, the district court determined that ERISA preempted Clayton's claims against Conoco.

Clayton proceeded to amend his complaint twice.  He added an ERISA civil enforcement claim under Plan § 2.12(e), and added the Plan, Wachovia, and McMorran as additional defendants.

### 4.     Clayton's Second Amended Complaint[4]

In his second amended complaint—the live complaint for purposes of this appeal—Clayton again asserted claims against Conoco for breach of the Offer

---

[4] In addition to the claims outlined below, Clayton stated claims under Plan § 2.12(b), as well as claims for breach of the Offer Letter pertaining to Conoco's failure to transition him to certain post-merger employee benefits programs.  Clayton has not pursued these claims on appeal.  We therefore do not address them in this opinion.

Letter and breach of its obligations under the Plan. This time, Clayton specifically placed those claims under the respective headings "CAUSES OF ACTION: Count One — ConocoPhillips' Breach of Contract (Offer Letter)" and "CAUSES OF ACTION: Count Two—Breach of Contract (the Plan)."

That said, despite the phrasing of the count headings, Clayton did not assert any specific claims, under either heading, for breach of contract pertaining to a substantial reduction in his post-merger job position and responsibilities. Rather, Clayton relied on general statements, placed directly under the count headings, that incorporated-by-reference the entirety of his designated background and jurisdictional information.[5]

Under the heading "Count Three—ERISA," Clayton noted that "[t]o the extent ERISA applies to [his] claim for severance benefits, Defendants have violated ERISA, including 29 U.S.C. § 1132." Clayton proceeded to attack the Trustee's July 14, 2008 decision as "arbitrary and capricious" and without "support in the law or facts."

Finally, Clayton asserted his entitlement to attorneys' fees. At no point in his complaint did Clayton specifically attack the validity or enforceability of the Waiver.[6]

### 5.    The Defendants' April 2010 Motions for Summary Judgment

On April 19, 2010, all defendants moved for summary judgment. The district court ruled on July 2, 2010.

---

[5] Paragraphs 21-22 of Clayton's background and jurisdictional information alleged that Clayton's post-merger "job responsibilities and position . . . were substantially reduced."

[6] That said, in paragraphs 17-19, under the heading "FACTUAL BACKGROUND," Clayton documented the existence of the Waiver. In paragraph 18, Clayton specifically noted that the Waiver was expressly given "in consideration of my employment on the terms and conditions set out [in the Offer Letter]." While imprecise, this arguably could be read as an attack on the Waiver as unenforceable for inadequate consideration.

The district court granted complete summary judgment to Conoco, McMorran, and Wachovia.[7]  However, the district court granted only partial summary judgment to the Plan because it found that the Trustee had failed to address the issue of the Waiver's validity in its July 14, 2008 decision.

### a.  Clayton's Claim Against Conoco for Breach of the Offer Letter

With respect to Clayton's claim against Conoco for breach of the Offer Letter, pertaining to a substantial reduction in Clayton's post-merger job position and responsibilities, the district court held that Clayton had waived his claim for failure to plead it with specificity.

### b.  Clayton's Claim Against Conoco for Breach of Its Obligations Under the Plan

Without comment, the district court declined to address Clayton's claim against Conoco for breach of its obligations under the Plan.  Presumably, the district court did so because it had determined that ERISA preempted those claims.

### c.  Clayton's ERISA Civil Enforcement Claims Against All Defendants-Appellees

With respect to Clayton's ERISA civil enforcement claim under Plan § 2.12(e), the district court held "that the only proper defendant . . . is the Plan." Next, the district court split Clayton's claim into distinct sub-claims (i) comparing the job Clayton accepted in the Offer Letter with the job Clayton actually performed at the time of his resignation (claims brought due to specified events or conditions "in the future"); and (ii) comparing Clayton's position and

---

[7] The district court's July 2, 2010 opinion did not expressly grant summary judgment to Wachovia, as it did to Conoco and McMorran.  However, in light of the district court's determination "that the only proper defendant for purposes of Clayton's ERISA claim is the Plan," it appears from context that the summary judgment extended to Wachovia.  On appeal, Clayton has not challenged Wachovia's assertion that it no longer is a proper party to these proceedings.  *See* Jul. 5, 2012 Letter from Wachovia's Counsel.  Accordingly, we treat any challenge to the district court's July 2, 2010 summary judgment—as extended to Wachovia—as waived.

responsibilities immediately before and after the merger (claims brought "as a result of" the merger).

Regarding the first sub-claim, the district court upheld the Trustee's July 14, 2008 decision that Clayton had not resigned for "Good Reason."[8]  Regarding the second sub-claim, the district court found that Clayton had previously conceded, in his March 4, 2008 claim to the Plan, that the Waiver, if valid and enforceable, covered the sub-claim.[9]  However, the district court found that the Trustee had failed to reach the issue of the Waiver's validity and enforceability in its July 14, 2008 decision.  The district court thus directed the parties to brief the question of whether it should remand to the Trustee for a decision on validity and enforceability in the first instance.

### 6.     The Trustee's Decision on Remand Concerning the Validity and Enforceability of the Waiver

Upon further briefing, the district court stayed its proceedings, and remanded to the Trustee for a decision on the validity and enforceability of the Waiver.  Before the Trustee, Clayton attacked the Waiver as invalid and unenforceable due to fraud in the inducement, on account of material breach by Conoco, and because the severance benefits to which Clayton already was entitled under the Plan exceeded the consideration Conoco gave him in exchange for the Waiver.  On November 22, 2010, the Trustee issued its decision that the Waiver was valid and enforceable.

In assessing Clayton's three attacks on the validity and enforceability of the Waiver, the Trustee applied the common law presumption that a written contract is integrated, Restatement (Second) of Contracts § 209(3) (1981), as well as Texas's parol evidence rule, *Beijing Metals & Minerals Imp./Exp. Corp. v.*

---

[8]  The Trustee only addressed the first sub-claim in its July 14, 2008 decision.

[9]  Clayton has not appealed this finding.  Accordingly, the overriding question before us, concerning the second sub-claim, is whether the Waiver was valid and enforceable.

*Am. Bus. Ctr., Inc.*, 993 F.2d 1178, 1182-83 (5th Cir. 1993) (citations and footnote omitted). In doing so, the Trustee assessed Clayton's attacks against only the actual written terms of the Offer Letter.

### a.     Adequacy of Consideration

With respect to adequacy of consideration, the Trustee first determined that Conoco had made a sufficient prima facie showing under *Williams v. Phillips Petroleum Co.* that Clayton had received adequate consideration for the Waiver. *See Williams*, 23 F.3d 930, 935 (5th Cir. 1994) (citing *O'Hare v. Global Natural Res., Inc.*, 898 F.2d 1015, 1017 (5th Cir. 1990)). Next, the Trustee determined that Clayton had not met his evidentiary burden to establish, *inter alia*, that the value of the consideration Conoco had provided in exchange for Clayton's Waiver—namely, a post-merger job—had not exceeded the value of the approximately $600,000 in severance benefits that Clayton otherwise would have been entitled to under the Plan. The Trustee relied upon *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 374-75 (5th Cir. 2002) (citing *O'Hare*, 898 F.2d at 1017), in stating that "[i]f the severance plan had been the better deal, presumably, [Clayton] would have taken it instead" of the job with Conoco.

As a distinct basis for rejecting Clayton's adequacy of consideration argument, the Trustee noted that "Clayton ratified [the Offer Letter] by continuing to work for two years under its written terms." *See Grillet v. Sears, Roebuck & Co.*, 927 F.2d 217, 220-21 (5th Cir. 1991), *overruled on other grounds*, *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994).

### b.     Fraud in the Inducement

With respect to fraud in the inducement, the Trustee determined that Clayton had not satisfied his burden to prove each prong of Texas's six-element test for fraud. *See Lane v. Halliburton*, 529 F.3d 548, 564 (5th Cir. 2008) (citations omitted). Furthermore, the Trustee reiterated that "[e]ven if the contract were fraudulently induced, [Clayton's] decision to continue working in

the new position for nearly two years after he discovered the fraud ratified the contract." *See Grillet*, 927 F.2d at 220-21.

### c.     Material Breach

As noted above, the Trustee assessed Clayton's material breach argument against only the written terms of the Offer Letter.  The Trustee rejected Clayton's material breach argument, concluding that "Clayton is alleging a breach of the contract he wishes he had made, not the contract he actually made."

### 7.     The Plan's Renewed Motion for Summary Judgment

After the district court lifted its stay, the Plan again moved for summary judgment.  The same day, Clayton submitted a brief appealing the Trustee's decision on the validity and enforceability of the Waiver.

As an exhibit to his brief, Clayton submitted an application for attorneys' fees pursuant to Plan § 8.1.[10]  Upon the Plan's motion, the district court again stayed its proceedings and remanded to the Trustee for a decision on the attorneys' fees issue.

### 8.     The Trustee's Decision on Remand Concerning Attorneys' Fees

Before the Trustee, Conoco argued that Clayton was "not entitled to reimbursement under [Plan § 8.1] because his status as a Plan Participant ended when he resigned without [Good Reason]."  Clayton replied that Conoco was "judicially estopped" from arguing that Clayton was not a Participant because

---

[10]  Plan § 8.1 provides that:

> The Company shall pay all legal fees and related expenses (including the costs of experts, evidence and counsel) reasonably and in good faith [i] incurred by a Participant as they become due [ii] as a result of the Participant seeking to obtain or enforce any right or benefit provided by this Plan upon or following his or her termination of employment.

No. 12-20102

Conoco "necessarily took the contrary position when it removed his state court suit on the basis of ERISA preemption."

The Trustee issued its decision on June 2, 2011, denying Clayton's application for attorneys' fees. In reaching its decision, the Trustee concluded that Clayton had failed to satisfy either prong of Plan § 8.1, which provides for the recovery of attorney's fees that are: (i) "incurred by a Participant as they become due" or (ii) incurred "as a result of the Participant seeking to obtain or enforce any right or benefit provided by this Plan." The Trustee disregarded the judicial estoppel issue, noting that whatever estoppel argument Clayton might have *in federal court* would have no bearing on Clayton's claim for attorneys' fees before *the Trustee.*

### a.     Incurred by a Participant

With respect to the first prong of Plan § 8.1, the Trustee noted that under Plan § 3.2, a "Participant shall cease to be a Participant . . . if his employment is terminated following a Change in Control under circumstances where he is not entitled to a Severance Benefit under the terms of [the] Plan." Moreover, under Plan § 4.1(a)(C), no Severance Benefit "will be payable should the Participant's termination of employment be . . . initiated by the Participant for other than Good Reason." Since the district court already had decided the question of "Good Reason" against Clayton in its July 2, 2010 ruling on summary judgment, the Trustee reasoned that attorneys' fees under Plan § 8.1 ceased to be available to Clayton on March 18, 2008, the date he terminated his employment with Conoco for other than "Good Reason." Accordingly, the Trustee concluded that Clayton could not satisfy the first prong of Plan § 8.1.

### b.     To Obtain or Enforce Any Right or Benefit Provided by This Plan

With respect to the second prong of Plan § 8.1, the Trustee compared the attorneys' fees provision at issue in *Creel v. Houston Industries, Inc.*, 124 S.W.3d

11

No. 12-20102

742 (Tex. App. Hous. 2003), with the fees provision at issue in *Ludwig v. Encore Medical, L.P.*, 191 S.W.3d 285 (Tex. App. Austin 2006). In *Creel*, the fees provision stated that:

> It is the intent of the Company that the Executive not be required to incur legal fees and the related expenses associated with the interpretation, enforcement or defense of [the] Executive's rights under this Agreement by litigation or otherwise. . . . Without respect to whether the Executive prevails, in whole or in part, in connection with any of the foregoing, the Company will pay and be solely financially responsible for any and all attorneys' and related fees and expenses incurred by the Executive in connection with any of the foregoing.

124 S.W.3d at 745-46 (emphasis omitted). Noting the broad and unqualified language of the provision, the *Creel* appellate court affirmed the trial court's award of partial summary judgment to the plaintiffs on fees. *Id.* at 754-55.

By contrast, in *Ludwig*, the fees provision stated that: "The Company shall pay reasonable legal fees and expenses incurred by the Executive as a result of her seeking to obtain or enforce any right or benefit provided by this Agreement, promptly and from time to time, at her request as such fees and expenses are incurred." *Ludwig*, 191 S.W.3d at 290. Expressly distinguishing *Creel*, the *Ludwig* appellate court upheld the trial court's denial of fees. *Id.* at 296. The *Ludwig* court explained that it "reject[ed] Ludwig's reading that under this latently ambiguous provision Encore must reimburse legal expenses to every executive who seeks benefits under the severance agreement, even under circumstances where the agreement provides no benefits." *Id.* at 292-93.

Here, the Trustee observed that the language of Plan § 8.1 was much closer to the "latently ambiguous" language of the fees provision in *Ludwig*, than to the fees provision in *Creel* that provided for fees "[w]ithout respect to whether

12

the Executive prevails." Accordingly, the Trustee concluded that Clayton could not satisfy the second prong of Plan § 8.1.

### 9.     Clayton's Renewed Motion for Remand to State Court

After the district court again lifted its stay, Clayton renewed his motion for remand to state court and, in the alternative, appealed the Trustee's denial of his application for attorneys' fees.

Clayton's argument can be summarized as follows:  ERISA standing is determined at the time a claim is filed irrespective of the time the underlying injury occurred.  Therefore, if Clayton had ceased to be a Plan Participant upon his March 18, 2008 termination, he would not have had ERISA standing at the time he filed his initial October 2008 complaint in state court.  Without ERISA standing, there could not have been ERISA preemption.  Accordingly, the district court lacked subject matter jurisdiction and was obliged to remand to state court.

In an opinion issued November 1, 2011, the district court denied Clayton's renewed motion for remand and alternative appeal of the Trustee's decision on attorneys' fees.

### 10.     The District Court's Decision on the Plan's Renewed Motion for Summary Judgment

The Plan renewed its motion for summary judgment on the issue of the validity and enforceability of the Waiver, which the district court granted on January 20, 2012.  The district court entered final judgment against Clayton, and Clayton timely appealed.

## II. STANDARD OF REVIEW

### A.     The Three Decisions of the Trustee

If "the Plan undisputedly gives the [Trustee] the discretionary authority to construe the Plan's terms and to render benefit decisions," this Court reviews the Trustee's benefit decisions for abuse of discretion. *Holland v. Int'l Paper Co.*

No. 12-20102

*Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009) (footnote omitted) (citing, *inter alia,* *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).[11] We review de novo the Trustee's interpretations of other contracts, including the Offer Letter and Waiver. *See Dial v. NFL Player Supplemental Disability Plan*, 174 F.3d 606, 611 (5th Cir. 1999) (citation omitted).

Accordingly, we review de novo the Trustee's decision that the Waiver was valid and enforceable. We review for abuse of discretion the Trustee's decision that Clayton could not satisfy either prong of Plan § 8.1.

Ostensibly, our precedents would have us review for abuse of discretion the Trustee's ultimate decision that Clayton did not resign for "Good Reason," but review de novo the Trustee's underlying interpretation of the Offer Letter. In effect, this seemingly would amount to de novo review. We need not decide the controlling standard of review because we would hold that Clayton did not resign for "Good Reason" under either abuse of discretion or de novo review.

## B.    The District Court's Denials of Clayton's Motions for Remand

In general, the "denial of a motion to remand an action removed from the state courts to the federal courts is a question of law," which this Court reviews de novo. *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) (per curiam) (citation omitted). "[T]he burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citations omitted).

This Court reviews de novo "the question of whether a claim is preempted under ERISA." *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 529 (5th Cir. 2009) (citation omitted). Whether ERISA covers the underlying plan is "a mixed question of fact and law." *House v. Am. United Life Ins. Co.*, 499 F.3d 443, 449 (5th Cir. 2007) (citations omitted). "However, where the factual

---

[11] On appeal, Clayton has not challenged the district court's finding that the Plan confers discretion upon the Trustee to determine claims eligibility.

circumstances are established as a matter of law or undisputed, we have treated the question as one of law to be reviewed *de novo*." *Id.* at 448 (citation omitted).

## C.  The District Court's Grants of Summary Judgment

This Court reviews ERISA summary judgments de novo, "applying the same standards applied by the district court." *Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 627 (5th Cir. 2004) (citation omitted). "A grant of summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing, *inter alia*, FED. R. CIV. P. 56(c)). "In evaluating the existence of a genuine issue of material fact, we review the evidence and inferences drawn from that evidence in the light most favorable to the non-moving party." *Id.* at 627-28 (citation omitted).

## III. DISCUSSION

Clayton raises seven issues on appeal. We address each of them in turn.

## A.  Whether the Waiver is invalid and unenforceable, for lack of adequate consideration, because Clayton experienced a substantial reduction in his post-merger job position and responsibilities relative to the terms of the Offer Letter.

### 1.  Standard of Review

Clayton attacks the Trustee's November 22, 2010 decision that the Waiver was valid and enforceable and the district court's January 20, 2012 opinion upholding the Trustee's decision. We review this challenge de novo. *Dial*, 174 F.3d at 611 (citation omitted).

### 2.  Analysis[12]

#### a.  Presumption of Integration and Parol Evidence Rule

---

[12]  The analysis applicable to Clayton's argument that the Waiver is invalid and unenforceable for lack of adequate consideration is largely identical to the analysis applicable to Clayton's arguments that he resigned for "Good Reason" (Clayton's first sub-claim under Plan § 2.12(e)), and that the Waiver is invalid and unenforceable due to Conoco's material breach of the Offer Letter. Accordingly, the above analysis disposes of all three of these arguments.

No. 12-20102

Clayton flatly asserts that the Trustee wrongly applied the common law presumption that a written agreement is integrated, as well as Texas's parol evidence rule. However, in his briefs, Clayton provides no on-point authority for these positions—only attorney argument. We therefore conclude that Clayton has waived any challenge to the Trustee's application of the common law presumption of integration or Texas's parol evidence rule. *See* FED. R. APP. P. 28(a)(9).

### b.    The Change in Clayton's Title

Next, Clayton devotes four pages of briefing to the argument that Conoco's change of his title, from "Mgr. of A&D" to "Manager of Business Development," is highly probative evidence that Clayton experienced a substantial reduction in his post-merger job position and responsibilities. This argument is superficially appealing. However, Clayton selectively omits, other than in two sentences of his reply brief, that the Offer Letter expressly noted that he would manage "A&D" only within Conoco's "U.S. Lower 48, Exploration & Business Development" Organization. Clayton does not further develop this argument.

Even more troubling, Clayton provides only a minimal response to the Plan's documentation of multiple large projects Clayton participated in for Conoco post-merger. After accounting for the fact that Clayton now worked for a much larger company, these projects were substantively similar in both subject area and role to the projects Clayton had participated in at Burlington pre-merger. We therefore judge Clayton's argument concerning his change in title to be unpersuasive.

### c.    Texas "At Will" Employment Authority

Finally, Clayton contends that, under Texas law, "[a] promise of 'at will' employment alone cannot constitute adequate consideration." In making this rather broad contention, Clayton relies on the case of *Light v. Centel Cellular Co. of Texas*, 883 S.W.2d 642, 644-45 (Tex. 1994) (citations and footnotes omitted).

No. 12-20102

The problem, however, is that the Texas Supreme Court has revisited its holding from *Light* no less than three times in the past decade. *See Marsh USA Inc. v. Cook*, 354 S.W.3d 764 (Tex. 2011); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844 (Tex. 2009); *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644 (Tex. 2006). Moreover, *Light*—and all three subsequent cases—concerned the nuances of enforcing covenants not to compete. That is a wholly different issue than enforcing a waiver of change in control severance benefits for a high-level manager who worked for almost two years, and participated on the integration team, before resigning. Thus, we are unpersuaded by Clayton's "at will" employment argument, which is reliant upon outdated and out-of-context Texas authority.

**B.  Whether the Waiver is invalid and unenforceable on account of fraud in the inducement.**
   **1.    Standard of Review**

Clayton attacks the Trustee's November 22, 2010 decision that the Waiver was valid and enforceable and the district court's January 20, 2012 opinion upholding the Trustee's decision. We review this challenge de novo. *Dial*, 174 F.3d at 611 (citation omitted).

   **2.    Applicable Law**

We employ a two-step burden-shifting framework to assess a waiver's validity and enforceability:

> Once a party establishes that his opponent signed a release that addresses the claims at issue, received adequate consideration, and breached the release, the opponent has the burden of demonstrating that the release was invalid because of fraud, duress, material mistake, or some other defense. We examine the *totality of circumstances* to determine whether the releasor has established an appropriate defense.

*Williams*, 23 F.3d at 935 (emphasis added) (citing *O'Hare*, 898 F.2d at 1017).

17

No. 12-20102

We apply a six-factor balancing test to assess the "totality of the circumstances." *O'Hare*, 898 F.2d at 1017 (citations omitted).[13] Finally, we recognize a six-element test that a party asserting fraud must satisfy under Texas law.[14] *Lane*, 529 F.3d at 564 (citations omitted).

Here, Clayton challenges the validity and enforceability of the Waiver on account of fraud in the inducement with respect to the consideration he received. Under *Williams*, Conoco first must make a prima facie showing that Clayton received adequate consideration for the Waiver. Conoco easily satisfies this first *Williams* step by showing that Clayton received a job with Conoco, which he performed for almost two years. Thus, the burden shifts to Clayton to show that

---

[13] The six *O'Hare* factors are:

> (i) the plaintiff's education and business experience;
> (ii) the amount of time the plaintiff had possession of or access to the agreement before signing it;
> (iii) the role of [the] plaintiff in deciding the terms of the agreement;
> (iv) the clarity of the agreement;
> (v) whether the plaintiff was represented by or consulted with an attorney; and
> (vi) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

898 F.2d at 1017 (citations omitted).

[14] The six *Lane* elements are:

> (i) that a material representation was made;
> (ii) the representation was false;
> (iii) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion;
> (iv) the speaker made the representation with the intent that the other party should act upon it;
> (v) the party acted in reliance on the representation; and
> (vi) the party thereby suffered injury.

529 F.3d at 564 (citations and internal quotation marks omitted).

18

the terms of the Offer Letter fraudulently induced him to execute the Waiver by misrepresenting the actual job he would receive with Conoco.

### 3.    Analysis

To satisfy the second *Williams* step, Clayton must apply the six *O'Hare* factors and the six *Lane* elements.  Clayton, however, presents no *O'Hare* or *Lane* analyses in his briefs.  He does not provide even a single citation to those authorities.

Rather, Clayton argues that, both pre and post-merger, Conoco employed two individuals who occupied the same role at Conoco that he had occupied at Burlington.  To Clayton, Conoco's failure to make "any attempt to alter" those individuals' responsibilities is indicative that Conoco had planned all along to make a substantial reduction to Clayton's responsibilities.  Clayton also critiques Conoco's "intensely bureaucratic structure."  Finally, Clayton alleges that at least one Conoco official had represented to him that, from the beginning, Conoco "had no intention" of paying him a severance benefit.

Relying on *Arete Partners, L.P. v. Gunnerman*, Clayton argues that summary judgment was inappropriate because he presented circumstantial evidence that Conoco never intended to give him the role promised in the Offer Letter, but simply wanted him to sign the Waiver so it could avoid paying his severance benefit.  *See* 594 F.3d 390, 394-95 (5th Cir. 2010) ("Even slight circumstantial evidence of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent." (citation and internal quotation marks omitted)).

A quick examination of Clayton's argument shows that it cannot withstand scrutiny.  First, Clayton points to post-merger redundancies as evidence of fraud.  However, were post-merger redundancies sufficient to allege fraud, then fraud allegations could arise out of *any* merger.  Moreover, *Arete Partners* requires a "breach of [a] promise to perform."  *Id.* at 395-95.  Yet, in Part A of

this"Discussion" section, we explained that there was no such breach. Finally, Clayton relies on the representation of a Conoco official that it "had no intention" of paying him the severance benefits. Even if true, this statement, by itself, is insufficient to create a genuine issue of material fact.

Clayton's failure to address our actual tests for fraud in this context—found in *O'Hare* and *Lane*—dooms his fraud in the inducement challenge to the validity and enforceability of the Waiver. Clayton's circumstantial evidence that there were post-merger redundancies, and that a Conoco official allegedly represented that Conoco "had no intention" of paying him the severance benefits, is not enough to save his claim pursuant to *Arete Partners* because there was no clear "breach of [a] promise to perform."

## C. Whether Clayton ratified any alleged fraud, thereby preserving the validity and enforceability of the Waiver regardless.

### 1. Standard of Review

Clayton attacks the Trustee's November 22, 2010 decision that the Waiver was valid and enforceable and the district court's January 20, 2012 opinion upholding the Trustee's decision. We review this challenge de novo. *Dial*, 174 F.3d at 611 (citation omitted).

### 2. Analysis

The Plan argues that, even if Conoco had fraudulently induced Clayton to execute the Waiver, a disgruntled ERISA claimant alleging "wrongful inducement" must "seek rescission shortly after discovering the misrepresentation." *Grillet*, 927 F.2d at 221 (citations and internal quotation marks omitted). Because Clayton submitted a claim to Conoco Human Resources as early as August 2006, but then continued working at Conoco until March 2008, the Plan argues that Clayton ratified any alleged fraud.

Clayton, in turn, argues that ratification is limited only to those circumstances where the party alleging fraud retained *monetary* consideration

No. 12-20102

without seeking prompt rescission.  In support of this argument, Clayton cites to *Faris v. Williams WPC-I, Inc.*, 332 F.3d 316, 322-23 (5th Cir. 2003), as an example of a case that involved monetary consideration.

The Plan has the better argument.  In light of the authority from *Grillet*, Clayton ratified any alleged fraud by continuing to work at Conoco for approximately two years after filing his initial claim with Conoco Human Resources.  Clayton's argument that both *Faris* and *Grillet* involved monetary consideration, and therefore are inapposite, is unavailing.  After all, no language in either of those cases even implies that their logic is limited to circumstances involving monetary consideration.  Despite having had ample opportunity to brief the issue of ratification, Clayton instead just repeats that monetary consideration was the gravamen of *Faris* and *Grillet*.  For clarification, we expressly hold that *Faris* and *Grillet* are not limited to circumstances involving monetary consideration.  There is no apparent logic or reason for such a limitation.

Accordingly, Clayton ratified any alleged fraud even if Conoco had fraudulently induced Clayton to execute the Waiver, which it did not.

**D.    Whether ERISA's civil enforcement provision "completely preempts" Clayton's state law claims against Conoco because the Plan requires "an ongoing administrative program."**

**1.    Standard of Review**

Clayton attacks the district court's March 23, 2009 opinion denying his first motion for remand.  We review this challenge de novo.  *Lone Star*, 579 F.3d at 529 (citation omitted); *House*, 499 F.3d at 448-49 (citations omitted).

**2.    Applicable Law**

We apply the following three-element test to determine whether a particular plan is covered by ERISA:

21

(i) whether from the surrounding circumstances a reasonable person could ascertain the plan's intended benefits, beneficiaries, source of financing, and procedures for receiving benefits;

(ii) whether the plan falls outside of the ERISA exemptions promulgated by the Department of Labor in 29 C.F.R. §§ 2510.3-1(j)(1)-(4); and

(iii) whether an employer established or maintained the plan with the intent to provide benefits to its employees.

*See generally Meredith v. Time Ins. Co.*, 980 F.2d 352, 355-56 (5th Cir. 1993) (citations, footnotes, and internal quotation marks omitted). "If any part of [this] inquiry is answered in the negative, the submission is not an ERISA plan." *Id.* at 355.

### a.    Clayton's Arguments

Narrowing the issues, Clayton notes that only the first prong of the *Meredith* test is in dispute here.  He argues that, in practice, this first *Meredith* prong limits ERISA coverage only to those plans that require "an ongoing administrative program to meet the employer's obligation." *Fort Halifax*, 482 U.S. at 11.  Clayton emphasizes that in *Fort Halifax*, the Supreme Court held that "[t]he requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation." *Id.* at 12.  He likens the severance benefits at issue here to the one-time, lump-sum payment at issue in *Fort Halifax*, in which there was no ERISA preemption.

More specifically, Clayton points to *Wells v. General Motors Corp.*, 881 F.2d 166, 176 (5th Cir. 1989), in which we expressly applied *Fort Halifax* to a General Motors severance benefit available in either a one-time, lump-sum payment or in two annual installments at the employee's election.  Clayton also points to *Fontenot v. NL Industries, Inc.*, 953 F.2d 960, 962-63 (5th Cir. 1992),

in which we similarly applied *Fort Halifax* to a terminated employee's suit for change in control severance benefits.

Clayton dismisses Conoco's position that this case's complexity actually demonstrates the necessity of an ongoing program to administer the Plan. Instead, he concludes that it is the *Waiver* that has made this case complicated, "not the terms of the Plan."

### b.    Conoco's Arguments

In turn, Conoco argues that severance plans can constitute employee benefits plans governed by ERISA. *See Massachusetts v. Morash*, 490 U.S. 107, 116 (1989) (citations omitted). Conoco then submits that in *Fontenot*, this Court expressly predicated its analysis on the fact that the plan at issue "require[d] no administrative scheme because those employees included in the plan were to receive benefits upon termination regardless of the reason for termination." *Fontenot*, 953 F.2d at 963. In its briefs, Conoco notes that here, by contrast:

> (i) the Trustee "must exercise discretion in determining whether 'Good Reason' exists when a Participant terminates his or her employment";
>
> (ii) the Trustee "must follow administrative procedures to calculate the severance benefit for each Participant";
>
> (iii) "the Plan does not rely on a single event to trigger benefits since a Participant can claim benefits any time during a two-year period after a change in control"; and
>
> (iv) "the Plan provides for ongoing benefits," including a bonus, severance pay, various insurance coverages, and outplacement assistance.

Having distinguished *Fontenot* and, by extension, *Wells*, Conoco puts forth that, in this Circuit, ERISA covers those severance plans that: (i) only grant benefits to employees terminated under specified criteria; (ii) confer discretion

upon the Trustee to determine whether an employee has met those criteria; and (iii) are effective for an extended period of time, or require some sort of administrative apparatus. *See Crowell v. Shell Oil Co.*, 541 F.3d 295, 302-07 (5th Cir. 2008); *Perdue v. Burger King Corp.*, 7 F.3d 1251, 1253 n.5 (5th Cir. 1993) (citation omitted); *Whittemore v. Schlumberger Tech. Corp.*, 976 F.2d 922, 923 (5th Cir. 1992).

Conoco concludes by referring to additional authority from our sister circuits, which have held that severance plans comparable to the Plan require ongoing administrative programs and, therefore, constitute ERISA plans. *See, e.g.*, *Petersen v. E.F. Johnson Co.*, 366 F.3d 676, 679-80 (8th Cir. 2004); *Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613, 616-17 (6th Cir. 2002); *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 934-35 (8th Cir. 1999); *Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 567 (2d Cir. 1998); *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1323 (9th Cir. 1992) (Wisdom, J., sitting by designation) (expressly distinguishing *Fontenot* on the basis of the administrator's discretion).

### 3.    Analysis

We agree with Conoco that ERISA's civil enforcement provision "completely preempts" Clayton's state law claims against it. Had *Fontenot* and *Wells* been our last word on the proper application of *Fort Halifax*, this issue might have come out differently. After all, the severance benefits at issue here are "a one-time, lump-sum payment triggered by a single event." *Fort Halifax*, 482 U.S. at 12. Nevertheless, Conoco convincingly distinguishes *Fontenot* and *Wells* to show that "an ongoing administrative program" is necessary because of the instant Trustee's claims eligibility discretion. *See Crowell*, 541 F.3d at 302-07.

Additionally, we are persuaded by the analysis of the district court in *Wimsatt v. Burlington Resources, Inc.*, No. 2:08-cv-00269, slip op., at *8-10 (D.N.M. Sep. 30, 2008), which concluded that ERISA covers the same Burlington

Resources severance plan at issue here.  The *Wimsatt* court is the only other court to have construed the Plan.  Similarly, we are persuaded by the learned analysis of our sister circuits in *Petersen*, *Cassidy*, *Emmenegger*, *Tischmann*, and *Bogue*, which addressed ERISA preemption in circumstances comparable to the ones at issue here.

In light of the above, we conclude that ERISA "completely preempts" Clayton's state law claims against Conoco.  For this reason, we also conclude that the district court did not err by denying Clayton's first motion for remand.

**E.    Whether Clayton can be a "Participant" as defined by ERISA for purposes of determining preemption, but not a "Participant" as defined by Plan § 8.1 for purposes of recovering attorneys' fees under the Plan.**

**1.    Standard of Review**

Clayton attacks the district court's November 1, 2011 opinion denying his renewed motion for remand.  We review this challenge de novo.  *Lone Star*, 579 F.3d at 529 (citation omitted); *House*, 499 F.3d at 448-49 (citations omitted).

**2.    Applicable Law**

As noted above in the "Background" section of this opinion, Clayton's argument can be summarized as follows:  ERISA standing is determined at the time a claim is filed irrespective of the time the underlying injury occurred.  Therefore, if Clayton had ceased to be a Plan Participant upon his March 18, 2008 termination, he would not have had ERISA standing at the time he filed his initial October 2008 complaint in state court.  Without ERISA standing, there could not have been ERISA preemption.  Accordingly, the district court lacked subject matter jurisdiction and was obliged to remand to state court.

**a.    The District Court's November 1, 2011 Opinion**

The district court rejected this argument.  It explained that, under the ERISA statute, a "Participant" includes "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from

an employee benefit plan which covers employees of such employer . . . or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). The district court further explained that, for purposes of determining ERISA standing, the Supreme Court has held that Section 1002(7) is inclusive of "former employees who . . . have [i] a colorable claim [ii] to vested benefits." *Firestone*, 489 U.S. at 117 (citation and internal quotation marks omitted).

Adopting the Seventh Circuit's analysis from *Panaras v. Liquid Carbonic Industries, Inc.*, 74 F.3d 786 (7th Cir. 1996), the district court restated the *Firestone* standing test to include claims brought by a former employee who "has a colorable claim to benefits which the employer promised to provide pursuant to the employment relationship and which a non-frivolous argument suggests have accrued to the employee's benefit." *Panaras*, 74 F.3d at 791 (citing, *inter alia*, *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1221 (5th Cir. 1992) ("[T]he employer should not be able through its own malfeasance to defeat the employee's standing." (citation and footnote omitted))).

The district court further adopted the Seventh Circuit's analysis from *Jackson v. E.J. Brach Corp.*, 176 F.3d 971 (7th Cir. 1999). In *Jackson*, the Seventh Circuit concluded that the plaintiffs had ERISA standing under the restated test from *Panaras*, even though they had refused to sign releases on which the disputed ERISA benefits were conditioned, because their claims alleged that the employer had "promised to provide them with severance benefits if they were involuntarily terminated." *Jackson*, 176 F.3d at 979 (citing *Panaras*, 74 F.3d at 791). Here, the district court determined that Clayton had similarly asserted "a colorable claim to severance benefits that vested when he resigned within two years after the merger and, in his view, with 'Good Reason.'"

Finally, the district court flatly rejected Clayton's contention that the court's ruling that he was a "Participant," as defined by the ERISA statute, necessarily impelled a finding that he was a "Participant," as defined by the

Plan, for purposes of recovering attorneys' fees under § 8.1. The district court explained that:

> The definition of Participant for purposes of ERISA jurisdiction, which includes any former employee with a colorable claim to ERISA benefits, is much broader than the definition of Participant under the Plan, which is restricted to current employees and those employees who terminate their employment under circumstances where they are actually entitled to benefits under the Plan.

### b.    Clayton's Arguments on Appeal[15]

Clayton challenges the district court's reliance on *Firestone*'s "colorable claim to vested benefits" rule. *See* 489 U.S. at 117-18 (citation and internal quotation marks omitted). He argues that *Firestone* only applies to give the benefit of the doubt to a *plaintiff* when his status is uncertain.

Furthermore, Clayton argues that to distinguish between the meaning of "Participant" for purposes of determining ERISA preemption, and "Participant" for purposes of recovering attorneys' fees, "is nonsensical on its face." He submits that:

> The Plan does not create any benefits for nonparticipants and it does not create any category of persons who could become beneficiaries in the future. Since no benefits are available under the Plan except to those who are "participants" as the Plan defines them, it would be

---

[15] Clayton makes additional arguments, which are predicated on inapposite caselaw. He argues that *Miller v. Rite Aid Corp.*, 334 F.3d 335 (3d Cir. 2003), and *Weaver v. Employers Underwriters, Inc.*, 13 F.3d 172 (5th Cir. 1994), support his position that he lacks ERISA standing simply because he is not a "Participant," as defined by the Plan, for purposes of recovering attorneys' fees under Plan § 8.1. However, what *Miller* and *Weaver* stand for is that the bare *ipse dixit* of a plan claimant is insufficient to support ERISA standing, irrespective of whether ERISA happens to cover the plan in question. Unlike the claimants in *Miller* and *Weaver*, Clayton has ERISA standing to pursue his claim for severance benefits. He just does not qualify under the specific language of Plan § 8.1 for the additional recovery of attorneys' fees. *Miller* and *Weaver* are therefore distinguishable.

impossible to be a "participant" for ERISA jurisdictional purposes without being a "participant" of the Plan.

### 3.    Analysis

Clayton's arguments are unconvincing—both with respect to the dual definitions of "Participant" and with respect to the proper interpretation of *Firestone*.

### a.    The Proper Interpretation of *Firestone*

As Clayton argues, *Firestone* could be read as an effort by the Supreme Court to err on the side of an ERISA plaintiff's standing when in doubt. The natural corollary to liberal federal standing would be liberal federal preemption of corresponding state law claims. Otherwise, ERISA plaintiffs could have it both ways, notwithstanding the doctrine of "complete preemption."

### b.    The Dual Definitions of "Participant"

A "Participant" as defined by the ERISA statute, 29 U.S.C. § 1002(7), is not necessarily the same as a "Participant" as defined by a plan document. This is because, if a plan document alone could define "Participant," then it would have been redundant for ERISA to have done so as well. After all, almost any covered plan would include a definition of "Participant" like the one found in Plan §§ 2.15 and 3.2. We will not read as fundamental a provision to the ERISA statutory scheme as the definition of "Participant" to be mere surplusage.

In addition, and perhaps more fundamentally, the instant Plan provides a substantive contractual right to recover attorneys' fees, but only for claims brought within the contours of §§ 2.15, 3.2, 8.1, etc. It would be strange indeed to say that the Plan could create a right to fees but not define the contours of that right.

ERISA, through its civil enforcement mechanism, simply provides a statutory process for vindicating whatever substantive rights a covered plan creates (as well as standards, to ensure that vested benefits are properly

safeguarded until those rights are vindicated). Thus, there is nothing at all discordant about Clayton qualifying as a "Participant" for purposes of ERISA preemption but not qualifying as a "Participant" for purposes of recovering attorneys' fees under the Plan. The district court correctly denied Clayton's renewed motion for remand.

**F.    Alternatively, whether Clayton can satisfy both prongs of Plan § 8.1 and, therefore, is entitled to recover attorneys' fees under the Plan.**

### 1.    Standard of Review

Clayton attacks the Trustee's June 2, 2011 decision denying his application for attorneys' fees and the district court's November 1, 2011 opinion upholding the Trustee's decision. We review this challenge for abuse of discretion. *Holland*, 576 F.3d at 246 (citations and footnote omitted).

### 2.    Analysis

First and foremost, Clayton addresses only the first prong of Plan § 8.1 in his briefs. Because Clayton must satisfy both prongs of § 8.1, and the Trustee determined that he had satisfied neither, Clayton's failure to brief the second prong necessarily results in affirmance of the Trustee. Moreover, Clayton addresses the first prong only in his reply brief. Therefore, Clayton has waived even his arguments with respect to the first prong. *See, e.g.*, *Jones v. Cain*, 600 F.3d 527, 540-41 (5th Cir. 2010) (citations omitted) ("Arguments raised for the first time in a reply brief are generally waived.").

In his reply brief, Clayton argues that the Trustee's June 2, 2011 decision engrafted a "success requirement" for the recovery of attorneys' fees, when only a "good-faith" or "colorable" claim should have been necessary under the Plan's contractual language. Put differently, Clayton argues that whether or not he resigned for "Good Reason" goes to the heart of his claim for severance benefits, and that even if he loses on that question, the adverse "Good Reason"

determination should not then be used to deny him "Participant" status for purposes of fee-recovery.

We make one brief observation as to this argument. While Clayton's "success requirement" argument may superficially resonate, in that allowing fees only upon a determination of "Good Reason" might deter litigation of the "Good Reason" issue in the first place, it warrants noting that Burlington/Conoco had *no* obligation to include *any* contractual fee-shifting provision in the Plan.[16]

Thus, Clayton has waived any challenge to the Trustee's June 2, 2011 decision denying his application for attorneys' fees, and the district court's November 1, 2011 opinion upholding the Trustee's decision. Furthermore, Clayton's argument concerning the first prong of Plan § 8.1 would be unlikely to prevail were we to reach it.

**G.   Whether Clayton waived his claim for breach of the Offer Letter, pertaining to a substantial reduction in his post-merger job position and responsibilities, for failure to plead with specificity.**

**1.   Standard of Review**

Clayton attacks the district court's July 2, 2010 determination that he had waived this claim for failure to plead it with specificity. This challenge presents a question of law, which we review de novo. *See Shaikh v. Holder*, 588 F.3d 861, 863 (5th Cir. 2009) (citation omitted).

**2.   Applicable Law**

Clayton challenges the district court's determination that he waived his non-ERISA claim for breach of the Offer Letter, pertaining to a substantial reduction in his post-merger job position and responsibilities, for failure to plead with specificity. In making this argument, Clayton relies heavily on the liberal

---

[16]   To be clear, attorneys' fees still may be available under the ERISA statute itself. *See, e.g.*, 29 U.S.C. § 1132(g)(1) ("Attorney's fees and costs"). We take no position on Clayton's eligibility for fees under this provision.

notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2) and the allowance for adoption by reference in Rule 10(c).

Conoco responds that Clayton's exclusive reliance upon a provision that incorporated-by-reference the *entirety* of his background and jurisdictional information was insufficient to provide notice under Rule 8(a)(2), notwithstanding Rule 10(c)'s allowance for at least some adoption by reference.

Additionally, Conoco submits that Clayton ratified any breach of the Offer Letter by continuing to work at Conoco for almost two years. In short, Conoco asserts that any deviation from the Offer Letter amounted to a contract modification, which Clayton then proceeded to ratify.

Finally, Conoco argues that even if Clayton had not waived his claim for breach of the Offer Letter, the claim is a disguised ERISA claim because damages would be measured by severance benefits owed. Accordingly, the claim would be conflict-preempted regardless.

### 3.    Analysis

For the same reasons discussed in Part C of this "Discussion" section, Clayton ratified any breach of the Offer Letter by continuing to work at Conoco for approximately two years. Therefore, Conoco would prevail on ratification alone.

Nevertheless, Conoco also would prevail on failure to plead with specificity. Under Clayton's interpretation, Rules 8(a)(2) and 10(c) could be read to allow for a plaintiff to write an indiscriminate background section in lieu of particularized pleadings. Taken to its logical conclusion, this interpretation is not acceptable. After all, even liberal notice pleading still requires at least some *pleading. See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citations omitted). At least on these facts, where Clayton already had amended his complaint twice, Rule 10(c) did not allow for his incorporation-by-reference of the entire background section with

only minimal indication as to what he actually pled.  Rule 8(a)(2) requires at least some precision in pleading.  Accordingly, Clayton did not plead with sufficient specificity, and Conoco prevails on that basis as well.

On a final note, in light of Clayton's ratification and failure to satisfy Rule 8(a)(2), we need not address conflict preemption in this opinion.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the final judgment of the district court in full.