Mark EBENSTEIN, Plaintiff,

v.

ERICSSON INTERNET APPLICATIONS, INC., f.k.a. Ericsson Messaging Systems, Inc., Defendant.

No. CV 01–5358.

United States District Court, E.D. New York.

May 5, 2003.

Baratta & Goldstein, By Howard J. Goldstein, Esq., New York.

Epstein Becker & Green, P.C., By Evan J. Spelfogel, Esq., New York.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an action commenced by Plaintiff Mark Ebenstein ("Plaintiff"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff seeks to recover severance benefits allegedly due to him under an ERISA plan.[1] Defendant denies Plaintiff's entitlement to benefits and has asserted a counterclaim seeking repayment of a bonus and relocation expenses. Presently before the court is Defendant's motion for summary judgment dismissing the complaint and granting the relief sought on the counterclaim.

## Background

### I. The Parties and Their Business Relationship

Plaintiff is an individual who resides in the Eastern District of New York. Defendant is Ericsson Internet Applications, Inc. ("Ericsson or the 'Company'"). Ericsson describes itself as a company that is a leading supplier of mobile communication systems and a provider of core technology for mobile handsets.

In January of 2001, Plaintiff received an offer of employment from Ericsson serve as a Product Marketing Manager. Plaintiff was to be employed in the Product Line Entertainment Department at Ericsson's Woodbury, New York office. In addition to a yearly salary of $85,000, Ericsson agreed to pay Plaintiff a one time signing bonus of $5,000. Ericsson also agreed to reimburse Plaintiff for expenses incurred in relocating to Long Island from Connecticut. The terms pursuant to which these latter two payments were made are contained in Ericsson's formal written offer of employment and the company's "Relocation Policy and Procedure for Newly-Hired U.S. Based Employees" (the "Relocation Policy").

The formal offer of employment and the Relocation Policy are before the court and it is undisputed that they were in Plaintiff's possession when he agreed to accept Ericsson's offer of employment. The letter offering Plaintiff his employment advised him that the $5,000 signing bonus would have to be repaid to the company in the event that Plaintiff resigned from the company within the first twelve months of his employment. Similarly, the Relocation Policy states, *inter alia*, that if Plaintiff voluntarily terminated his employment

---

**1.** Plaintiff's original complaint also asserted a claim for health insurance benefits pursuant to COBRA. That claim has been dropped and the only remaining ERISA claim is for severance benefits.

with Ericsson before expiration of a one year period, the relocation expenses would have to be repaid to the Company. Plaintiff accepted the position offered and began his employment with Ericsson on March 5, 2001.

## II. The Restructuring and the May 31 E–Mail

Two months after Plaintiff began his employment with Ericsson, the company underwent a restructuring. Ericsson employees were advised of the impending changes via an e-mail dated May 31, 2001 (the "May 31 e-mail"). A print out of that e-mail is before the court. Neither Plaintiff's receipt, nor the language of the May 31 e-mail, are in dispute. As set forth in the May 31 e-mail, the company was about to restructure and would implement a reduction in force. Certain identified departments, including Plaintiff's, were to be discontinued. While the May 31 e-mail refers to impending reductions in Ericsson's labor force, it did not specify which employees were to be terminated. Instead, it was stated that "some employees will assume new positions ... and others will be separated from the company." The notification date for the reductions in force was set, in the May 31, e-mail, at July 5, 2001.

## III. The Events of June–July 2001

The parties dispute certain factual matters that have been alleged to occur during June of 2001. While Defendant alleges that Plaintiff approached Ericsson personnel to volunteer for the lay-off, without having to repay his relocation expenses, Plaintiff disputes the way in which Defendant characterizes these conversations. Because a decision as to the credibility of the parties on these conversations is not necessary to disposition of this motion, the court adopts neither parties' version of the

discussions that allegedly took place between Plaintiff and Ericsson during June of 2001.

What is not in dispute is the fact that Plaintiff left work early on July 2, 2001 and never returned to the company. What is also not in dispute are the contents of correspondence sent between Plaintiff and Kathy Raftery, Ericsson's Director of Human Resources, following July 2. On July 3, 2001, Plaintiff sent a letter to Ericsson demanding payment of severance benefits as a consequence of his recent lay-off. Raftery responded to Plaintiff's July 3 letter in a letter dated July 6, 2001. That letter referred to the fact that three weeks prior to the date of the letter, Plaintiff was given a position as a product marketing manager in a different division of Ericsson and stated that Plaintiff was expected to return to the company to assume his new responsibilities. Raftery's July 6 further stated that if Plaintiff did not return to the office by July 9, or inform the company as to why he could not return, Ericsson would treat such action as Plaintiff's voluntary resignation from the Company.

Plaintiff's response to Raftery's July 6 Letter is contained in a letter of that same date. In his letter, Plaintiff states that upon his receipt of the May 31 e-mail, he "recognized that effective July 5, 2001[he] was officially laid-off by Ericsson." As to Raftery's statement regarding Plaintiff's return to work by July 9, Plaintiff responded that this statement was "rejected."

In a letter dated July 11, 2001, sent by Raftery to Plaintiff, Raftery refers to the May 31 e-mail and notes that persons to be laid off were to be informed of that fact on July 5, 2001. Raftery's letter continues, "[f]or the last time, you were not laid off in the most recent reduction-in-force." The letter concludes, "[b]y your absolute refusal to return to work, you have abandoned

your job. This does not entitle you to severance benefits. In addition, it triggers certain repayment requirements you have to Ericsson." When Plaintiff failed to return to Ericsson, he was sent a letter by Ericsson's counsel, demanding that he reimburse the Company $34,949.05. This amount was stated to reflect repayment of the $5,000 signing bonus plus relocation expenses of $29,949.05.

## IV. Plaintiff's Employment After Leaving Ericsson

As noted, Plaintiff never returned to his employment at Ericsson. Instead, beginning on July 30, 2001, Plaintiff began employment with Swissair/Sabena, a company located in Melville, New York ("Swissair"). Plaintiff's formal offer of employment with Swissair is contained in a letter dated July 6, 2001. The date of this letter and testimony taken at Plaintiff's deposition make it clear that Plaintiff applied for the position at Swissair in June of 2001, shortly after his receipt of the May 31 e-mail.

## V. The Complaint, the Counterclaim and the Motion for Summary Judgment

Plaintiff commenced the present action in August of 2001. The basis for federal jurisdiction is his claim that he has been denied payment of severance benefits pursuant to an ERISA plan. Defendant denies that ERISA jurisdiction exists and denies Plaintiff's claim of entitlement to severance benefits on the merits. Additionally, Defendant asserts a counterclaim for repayment of the $5,000 bonus as well as all relocation expenses. Arguing that no material questions of fact are present, Defendant moves for summary judgment dismissing Plaintiff's claims and awarding the full relief sought on the counterclaim. After reviewing applicable law, the court will turn to the merits of the motion.

## DISCUSSION

### I. Standards Applicable to Motions For Summary Judgment

A motion for summary judgement is properly granted only if the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FRCP 56(c); Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking judgment bears the burden of demonstrating that no issue of fact exists. McLee v. Chrysler Corp. 109 F.3d 130, 134 (2d Cir.1997). However, when the nonmoving party fails to make a showing on an essential element of its case with respect to which it bears the burden of proof, summary judgment will be granted. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party resisting summary judgment must not only show a disputed issue of fact, but it must also be a material fact in light of substantive law. Only disputed facts that "might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 242, 106 S.Ct. 2505.

### II. ERISA Jurisdiction

The sole basis for federal jurisdiction in this matter is Plaintiff's allegation that the severance benefits he seeks, exist pursuant to an ERISA plan. In the absence of such jurisdiction, Plaintiff is left only with a state law breach of contract claim and dismissal for lack of subject matter jurisdiction would be required.

Defendant's motion papers make a somewhat half-hearted argument that the benefits do not constitute an ERISA plan and that therefore, this federal claim must be dismissed. For his part, Plaintiff has not even bothered to counter Defendant's

argument regarding lack of ERISA jurisdiction. Indeed, counsel's barely two page memorandum of law contains not a single citation to any case or statute. Because ERISA is the sole basis for maintaining this action in this federal forum, the court, despite the parties' apparent lack of real interest, must address the jurisdictional issue before reaching the merits of the parties' claims. It is to that issue that the court now turns.

■ The issue of whether a plan is governed by ERISA is dependent, in part, upon whether the plan "requires an ongoing administrative program to meet the employer's obligation." *Kosakow v. New Rochelle Radiology Assocs., P.C.,* 274 F.3d 706, 736, quoting, *Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 11, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). The Supreme Court has held that a "one time, lump sum payment, triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation" and therefore is not a plan under ERISA. *Fort Halifax,* 482 U.S. at 12, 107 S.Ct. 2211 (1987).

■ Despite this seemingly broad language, the mere fact that a plan calls for a "one time" payment, like severance, does not require a finding that such a payment is not made pursuant to an ERISA plan. If that were the case, the payment of severance would never constitute an ERISA plan. This, however, is clearly not the law. *See Tischmann v. ITT/Sheraton Corp.,* 145 F.3d 561, 565 (2d Cir.1998) ("well-established" that severance plans can constitute ERISA plans); *Schonholz v. Long Island Jewish Medical Center,* 87 F.3d 72, 75 (2d Cir.1996) ("employee benefit plan" under ERISA held to "apply to most, but not all, employer undertakings or obligations to pay severance benefits"); *James v. Fleet/Norstar Group,* 992 F.2d 463, 467–68 (2d Cir.1993) ("[t]here is no

question that a program to pay severance benefits may constitute an 'employee welfare plan.' ") (citation omitted).

In *James v. Fleet/Norstar Group,* 992 F.2d 463 (2d Cir.1993), the Second Circuit held that the defendant company's promise to pay a one time bonus to employees who remained with the company, until a previously announced site closing was completed, did not constitute an ERISA plan. Relying on *Fort Halifax,* the Second Circuit characterized the agreement as a one time payment that did not amount to an ERISA plan. Among other things, the court noted that under the agreement in *James,* the termination date applied to all employees and was not contingent upon any individual circumstances. The calculation required to administer payments under the plan in *James* were noted to be a "far cry from the 'ongoing, particularized, administrative, discretionary analysis' " required to find the existence of an ERISA plan. *James,* 992 F.2d at 468, quoting, *Bogue v. Ampex Corp.,* 976 F.2d 1319, 1323 (9th Cir.1992).

■ In *Schonholz v. Long Island Jewish Medical Center,* 87 F.3d 72 (2d Cir. 1996), on the other hand, the Second Circuit held that a severance pay plan did constitute an ERISA plan. There, the court noted the factors to be considered when determining whether a severance plan falls within the scope of ERISA. Specifically, the court referred to: "(1) whether the employer's undertaking or obligation requires managerial discretion in its administration, (2) whether a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits, and (3) whether the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria. *Schonholz,* 87 F.3d at 76 (citations omitted).

Finding that all of the aforementioned factors favored the plaintiff, the Second Circuit held that the severance plan in *Schonholz* constituted an ERISA employee benefit plan. Specifically, the court noted: (1) that the effective period of the plan was unlimited; (2) that reasonable employees would expect severance pay; (3) that each employee's eligibility for severance would have to be individually determined and, (4) that administrative oversight of the plan required more than the making of arithmetical calculations. *Schonholz*, 87 F.3d at 76–77.

A similar consideration of the factors identified in *Schonholz* led the Second Circuit to conclude that the severance plan at issue in *Kosakow*, 274 F.3d at 737, constituted an ERISA plan. In that case, the court's finding that severance payments were made pursuant to an ERISA plan was supported by the fact that severance pay was offered without any date restriction and could therefore be reasonably seem as an ongoing company commitment. *Kosakow*, 274 F.3d at 736. The court also noted that the plan provided for the forfeiture of severance pay in the case of certain "for cause" terminations. This requirement that individual eligibility determinations be made weighed in favor of a finding that the plan at issue was an ERISA plan. *Id.* at 737. *See also Tischmann v. ITT/Sheraton*, 145 F.3d 561, 566–67 (2d Cir.1998) (severance plan requiring, *inter alia*, individual determinations regarding eligibility constituted an ERISA plan).

■ When considering the Ericsson termination policy, in light of the standards referred to above, the court holds that the agreement to make severance payments constitutes an ERISA plan. Notably, the Ericsson agreement applies to all employees and was not drafted for a single event such as a plant closing. As such, the plan can reasonably be interpreted as an ongoing commitment on the part of the Company. Since severance pay is not made in every case of separation, the policy requires administration to determine individual eligibility. These factors weigh in favor of a finding of an ERISA plan. This holding support the existence of federal jurisdiction. Accordingly, the court turns to the merits of the motion.

III. *Defendant is Entitled to Summary Judgment as to the Claim for Severance*

■ Plaintiff's claim for severance pay is made pursuant to the termination policy referred to above. That policy sets forth a schedule providing for the payment of severance to employees under certain circumstances. Section 2.2.4 of the termination policy states that in the event of a permanent payoff, Ericsson will, *inter alia*, make severance payments to employees. The policy further states that "corporate reorganization will not constitute layoff to any employee offered continuing employment with an affiliate, successor" or other identified entity.

A review of the documentary and testimony evidence presented in connection with this motion makes it clear that Plaintiff cannot fall within the termination policy because he was never laid off by Ericsson. While it is true that the division for which Plaintiff was initially hired was closed, and a corporate restructuring took place, that restructuring did not automatically result in Plaintiff's termination.

The May 31 e-mail, upon which Plaintiff places almost total reliance, gave Plaintiff notice only of the fact that he might be terminated. That e-mail states specifically that the notification date for terminated employees was to be July 5. While the e-mail could reasonably have made Plaintiff anticipate a possible termination, it did not effect any such termination. Instead, it

served only to put Plaintiff on notice of impending changes in the organization of Ericsson.

What likely occurred is that upon his receipt of the May 31 e-mail, Plaintiff immediately began a job search. Having found such employment with Swissair, Plaintiff accepted the new position, prior to the July 5 notification date. When Plaintiff failed to come to work on any day after July 2, the company sent him correspondence telling him that he had not been terminated. Much as Plaintiff would have liked to have been laid off, which would have allowed him to take the position with Swissair and receive severance payment, this was not the case.

Even if the court accepts that Plaintiff was somehow confused by the language of the May 31 e-mail, this would not change the decision here. The correspondence sent to Plaintiff following the July 5 lay off could not have made it clearer that Plaintiff was not one of those employees who would be separated from the company. The court cannot imagine language clearer than that of the July 11 correspondence from Karen Raftery which stated, in the simplest of terms, "[f]or the last time, you were not laid off in the most recent reduction-in-force."

There can be no question of fact as to whether or not Plaintiff was laid off by Ericsson either in May or July of 2001. He was never terminated. Instead, upon hearing of a reduction in force and a possible termination, he voluntarily left the company to assume a position with a different company. Plaintiff accepted a new position, gambling on the notion that he would be fired on July 5. He was not.

Because Plaintiff was not laid off from his position at Ericsson, he is not entitled to severance payments. Defendant's motion to dismiss Plaintiff's claim is, accordingly, granted.

## IV. Defendant is Entitled to Summary Judgment on its Counterclaim

Defendant's counterclaim seeks the repayment of the $5,000 signing bonus as well as expenses reimbursed to Plaintiff when he relocated from Connecticut to Long Island. As detailed above, both payments were made to Plaintiff on the express condition that he remain with the company for a period of one year. In the event that Plaintiff voluntarily left the company prior to expiration of the one year period, he would be responsible for paying both the bonus and relocation expenses back to Ericsson.

The basis for dismissal of Plaintiff's claim on the merits was that he was never laid off but instead, that he voluntarily left the company. It necessarily follows, therefore, that the provisions regarding repayment to Ericsson of the bonus and relocation expenses comes into effect. Because Plaintiff voluntarily left Ericsson prior to the expiration of one year, the company is entitled to summary judgment on its counterclaim.

## V. Judgment on the Counterclaim Requires Additional Documentation

The court will not enter judgment in favor of Ericsson for the amount claimed on its counterclaim at this time. Correspondence sent to Plaintiff in July of 2001 indicates that the company sought repayment of the $5,000 signing bonus plus relocation expenses of $29,949. While there is no dispute that the signing bonus amounted to $5,000, there is a question as to the proper amount to be awarded to Ericsson for relocation expenses. While the July letter sought $29,949, Ericsson's counterclaim sets the amount sought as $52,265.22. Ericsson's memorandum of law seeks $74,346.59.

In view of this discrepancy, the court will enter no judgment on Ericsson's coun-

terclaim until the company submits appropriate documentation detailing the exact amount paid to Plaintiff in relocation expenses. Once Defendant submits such documentation to the court, Plaintiff will be granted one week in which to object to any submitted expense. If Plaintiff fails to interpose a timely objection, the court will enter judgment in the amount claimed by Ericsson on the counterclaim.

## CONCLUSION

Defendant's motion for summary judgment dismissing Plaintiff's case is granted. Defendant's motion for summary judgment on its counterclaim is also granted. Defendant is ordered to submit documentation supporting the entry of judgment on its counterclaim as set forth above. The Clerk of the Court is directed to terminate the motions.

SO ORDERED.