**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 07-1196**
_____

RITESH AHUJA,

                    Plaintiff - Appellant,

          v.

ERICSSON, INCORPORATED; ERICSSON STANDARD SEVERANCE PAY PLAN;
ERICSSON TOP CONTRIBUTOR ENHANCED SEVERANCE PAY PLAN OF 2004,

                    Defendants - Appellees.

_____

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.   Roger  W.  Titus,  District  Judge.
(8:05-cv-03423-RWT)

_____

Argued:  March 20, 2008                 Decided:  May 12, 2008

_____

Before GREGORY and SHEDD, Circuit Judges, and William L. OSTEEN,
Jr., United States District Judge for the Middle District of North
Carolina, sitting by designation.

_____

Affirmed in part, reversed in part, and remanded by unpublished
opinion.  Judge Shedd wrote the opinion, in which Judge Gregory and
Judge Osteen joined.

_____

**ARGUED:** Marc Jonathan Smith, SMITH, LEASE & GOLDSTEIN, L.L.C.,
Rockville, Maryland, for Appellant.  Holly H. Williamson, AKIN,
GUMP, STRAUSS, HAUER & FELD, L.L.P., Houston, Texas, for Appellees.
**ON BRIEF:** Simon J. Garfield, AKIN, GUMP, STRAUSS, HAUER & FELD,
L.L.P., Houston, Texas, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

In this ERISA[1] benefits action, Ritesh Ahuja appeals from the district court's grant of summary judgment in favor of Ericsson, Inc. ("Ericsson"); Ericsson Standard Severance Pay Plan (the "Standard Plan"); and Ericsson Top Contributor Enhanced Severance Pay Plan of 2004 (the "Enhanced Plan"). As set forth below, we affirm in part, reverse in part, and remand.

I

For approximately eight years, Ahuja was employed by Ericsson and its predecessors, working for Ericsson's wholly-owned subsidiary Ericsson IP Infrastructure ("Ericsson IPI") in its Rockville, Maryland, office. During his employment with Ericsson IPI, Ahuja held various high-level technical positions. As an employee of Ericsson IPI, Ahuja participated in the Standard Plan, which provided severance compensation, subject to certain conditions, if he experienced a qualifying employment loss. In addition, as an employee with particular technical knowledge, Ahuja participated in the Enhanced Plan. This plan essentially served as a retention tool used to provide Ericsson's key employees with an incentive to remain with Ericsson. Under the terms of the Enhanced Plan, a participant would be entitled to a severance payment equal

---

[1]Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq.

to six months of his base salary in the event of a covered employment loss. As relevant here, a covered employment loss is defined as an involuntary termination "due to layoff or reduction-in-force." J.A. 70. The Enhanced Plan includes the following provision:

> Sale or Merger of Ericsson. Should all or any part of Ericsson or its assets or business to which a participant is assigned be sold, assigned, transferred, spun-off, reorganized, or merged with another entity, the participant will not be eligible for Enhanced Severance Benefits under this Plan if he or she is offered continuing employment with such entity regardless of whether the participant accepts the offer of employment and regardless of whether such offer is on comparable terms and conditions as the employee's current employment.

J.A. 72 ("Paragraph 8b").

In early 2005, Ericsson IPI closed its Rockville office and consolidated its operations in its Raleigh, North Carolina, location. Ericsson IPI offered Ahuja continued employment at its Raleigh office, which he declined. As a result, Ericsson IPI terminated Ahuja's employment, effective June 17, 2005. Ahuja then filed a claim for severance benefits, which the plan administrator denied, citing Paragraph 8b. Ahuja appealed this decision to Ericsson's Plan Administrative Committee (the "Committee"), which again denied Ahuja's claim. The Committee concluded that the exclusions of Paragraph 8b encompass a consolidation of two geographically distinct Ericsson offices because such a consolidation is a "reorganization" with another entity. The

4

Committee took the position that a geographically distinct office qualifies as "another entity" by noting that nothing in Paragraph 8b requires that the entity be a "non-Ericsson entity." J.A. 151.[2]

Ahuja filed suit under ERISA challenging the Committee's denial of benefits. The district court granted Ericsson's motion for summary judgment, finding that the Committee had acted within its discretion in denying Ahuja's claim pursuant to paragraph 8b. The district court also rejected Ahuja's claim for benefits under the Standard Plan, concluding that he had not filed a claim for these benefits with Ericsson.

Ahuja now appeals. There are no disputed material facts, and we review de novo the district court's grant of summary judgment based on its legal conclusions. Garofolo v. Donald B. Heslep Assocs., Inc., 405 F.3d 194, 198 (4th Cir. 2005). Additionally, because Ericsson reserved full discretion to interpret the terms of its plans and to adjudicate benefits claims, we would generally review its denial of benefits for an abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989).[3] Under this standard, a plan administrator's decision "will not be

---

[2]The Committee expressly declined to rule on any claim for benefits under the Standard Plan, noting that Ahuja had not filed a claim for these benefits.

[3]Although Ericsson is both the sponsor and administrator of its benefits plans, any conflict of interest it may have does not rise to the level necessary to reduce the deference we owe its determinations. Colucci v. AGFA Corp. Severance Pay Plan, 431 F.3d 170, 179 (4th Cir. 2005).

disturbed if it is reasonable, even if [the] court would have come to a different conclusion independently." Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997). However, in the context of an interpretation of a plan's language, we afford this deference only if the language at issue is ambiguous. Kress v. Food Employers Labor Relations Ass'n., 391 F.3d 563, 569 (4th Cir. 2004). Where, in contrast, the plan's language is clear and unambiguous, a plan administrator must construe the language as written, and we owe no deference to contrary constructions. Colucci, 431 F.3d at 176; Lockhart v. United Mine Workers of America 1974 Pension Trust, 5 F.3d 74, 78 (4th Cir. 1993).

II

In this case, the principal issue before us is whether we must defer to Ericsson's construction of Paragraph 8b as excluding Ahuja's claim for Enhanced Plan severance benefits. As already noted, this paragraph provides:

> Sale or Merger of Ericsson. Should all or any part of Ericsson or its assets or business to which a participant is assigned be sold, assigned, transferred, spun-off, reorganized, or merged with another entity, the participant will not be eligible for Enhanced Severance Benefits under this Plan if he or she is offered continuing employment with such entity regardless of whether the participant accepts the offer of employment and regardless of whether such offer is on comparable terms and conditions as the employee's current employment.

6

J.A. 72. Ericsson contends that this paragraph excludes Ahuja's benefits claim because the consolidation of its geographically distinct offices constitutes a reorganization. Ericsson offers two interpretations of Paragraph 8b to support its contentions.

First, Ericsson maintains that nothing in Paragraph 8b requires that the reorganization of Ericsson be with another entity and that the paragraph therefore covers internal reorganizations. In making this argument, Ericsson asserts that the phrase "with another entity" modifies only the immediately preceding term "merged" and not the prior term "reorganized." We find Ericsson's position unpersuasive.

We have long recognized that the meaning of a term cannot be determined in isolation but that the term must be read in the context in which it is used. See, e.g., Pinney v. Nokia, Inc., 402 F.3d 430, 454 (4th Cir. 2005). In context, the reorganization referred to by Paragraph 8b clearly is a reorganization with another entity. All of the terms surrounding "reorganized" require the participation of another entity: "sold," "assigned," "transferred," "spun-off," "merged." Further, the title of Paragraph 8b refers to the interaction of Ericsson and another entity: "Sale or Merger of Ericsson." Finally, the later reference in Paragraph 8b to continuing employment "with such entity" assumes the presence of another entity earlier in the paragraph; otherwise, the later reference would be devoid of meaning. Thus, within the

7

context of Paragraph 8b, "reorganized" can mean only reorganized with another entity.

Second, Ericsson asserts that even if Paragraph 8b requires the presence of another entity, a geographically distinct office of Ericsson itself constitutes "another entity." This argument likewise fails.

Because "entity" is undefined in the plan, it must be accorded its plain and ordinary meaning. Bailey v. Blue Cross & Blue Shield of Va., 67 F.3d 53, 57 (4th Cir. 1995). In addition, as noted earlier, we must examine the term in the context in which it is used. As Ahuja points out, both parties agree that an entity must have an "independent and separate existence." J.A. 46. Furthermore, in the legal context, an entity is "an organization (such as a business or a governmental unit) that has a legal identity apart from its members." Black's Law Dictionary (8th ed. 2004). The plain meaning of "entity," then, requires a discrete and independent organization with its own identity. While Ericsson IPI qualifies as an entity under this definition, a particular office of Ericsson IPI does not.

The context in which "entity" is used lends support to this meaning. Paragraph 8b uses the terms "sold," "assigned," "transferred," "spun-off," "reorganized," and "merged," and these terms are contained within a paragraph entitled "Sale or Merger of Ericsson" (emphasis added). Thus, the entire thrust of Paragraph

8

8b is directed toward a combination of "Ericsson" and "another entity" -- not Ericsson and itself.[4]

We therefore conclude that Paragraph 8b is unambiguous and does not embrace an internal reorganization of two Ericsson IPI locations. Accordingly, Ericsson retained no deference to interpret the paragraph's terms, and it erred when it relied on Paragraph 8b to deny Ahuja's claim for severance benefits.

III

Lastly, we turn to two secondary issues. First, Ahuja claims the district court erred in rejecting his claim for benefits under the Standard Plan. However, we agree with the district court that Ahuja may not raise this claim because he failed to file a claim for these benefits with Ericsson and to pursue his administrative remedies under the plan. See Gayle v. United Parcel Service, 401 F.3d 222, 226 (4th Cir. 2005). Second, Ahuja asserts that he is entitled to recover his attorney's fees pursuant to 29 U.S.C. § 1132(g). Because an award of attorney's fees under ERISA is committed to the discretion of the district court and may require

---

[4]We note that Ericsson's proposed definition of "entity" as embracing a geographically distinct office of Ericsson IPI would lead to arbitrary interpretations. For example, at argument Ericsson contended that two Ericsson IPI offices which were directly across the street from each other would not be separate entities. Yet, under Ericsson's own definition, these geographically distinct offices would seemingly constitute different entities.

9

certain factual findings, see Carolina Care Plan, Inc. v. McKenzie, 467 F.3d 383 (4th Cir. 2006), we leave this issue for the district court to consider on remand.

IV

In accordance with the foregoing, we affirm the judgment entered below as to Ahuja's claims under the Standard Plan, reverse the judgment and remand for entry of judgment in favor of Ahuja as to his claims under the Enhanced Plan, and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED