## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41479

MARK GOMEZ,

       Plaintiff - Appellant

v.

ERICSSON, INCORPORATED,

       Defendant - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

July 8, 2016

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Eastern District of Texas

Before SMITH, BARKSDALE, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Ericsson, Inc. laid off Mark Gomez. Gomez was eligible for severance compensation if he complied with the terms of a Release and Severance Agreement. Ericsson determined that he did not comply with a provision requiring the return of all Ericsson property because work files were missing on the company laptop he returned.

The lawsuit that followed requires us to answer two questions. Does the Employee Retirement Income Security Act (ERISA) govern this dispute? If so, did Ericsson abuse its discretion in concluding that Gomez was not eligible for severance pay?

No. 15-41479

## I

Gomez sold Ericsson telecommunications services for about three years before being laid off. Shortly after Gomez's termination, Ericsson presented Gomez with the Severance Agreement. Under its terms, Gomez was required to waive certain claims against Ericsson and return Ericsson property in his possession. In exchange for doing so, Ericsson promised Gomez severance pay pursuant to the terms of both its Standard Severance Plan and Top Contributor Enhanced Severance Plan of 2010.

The Plans provide lump-sum payments funded by Ericsson's general assets. For salaried employees like Gomez, the payment from the Standard Plan provides four or eight weeks of "notice pay" (it depends on the length of service), plus a week of "severance pay" for each full year of service. Employees who are also eligible for the Top Contributor Plan receive an additional lump sum of 39 weeks of pay. In the event Ericsson rehires an employee during the period covered by the severance pay under either plan, there is a repayment contingency that basically prevents the employee from receiving both severance pay and pay for actual work during the same period. The Top Contributor Plan that applied to Gomez could result in a more complicated calculation, as it allows offsets and deductions for numerous reasons, including bonuses and property retained by the employee.

In addition to calculating the amount of any payment, the Plan Administrator makes the initial determination of employee eligibility. Both Plans apply to employees who are terminated because of a permanent layoff or reduction in force. The Standard Plan also applies to those who resign for "Good Reason." "Good Reason" basically involves refusing to accept a new position that is either too far away from, or pays too much less than, one's current job. The Standard Plan provides quantifiable standards for these determinations and also notice requirements for such resignations. Finally,

and what matters most for this case, eligibility under both Plans is conditioned on execution and nonrevocation of a "satisfactory waiver and release of claims in favor of Ericsson."

This gets us back to the Severance Agreement with the "return of property" requirement. Gomez returned Ericsson's physical equipment. But before returning the company laptop, he wiped the hard drive of all files, including ones related to work. Gomez contends he did this because of safety concerns about the storage of unspecified personal information and confidential Ericsson data on the unencrypted laptop. Ericsson says the erased work files mattered because they were the only copies of the raw data supporting Gomez's final deliverables. As a result, Ericsson denied Gomez any severance benefits.

In response, Gomez provided Ericsson with a copy of his personal hard drive in hopes that it would contain the files, but he conceded that the files may not be there. Ericsson's technology staff found that the hard drive did not contain the deleted files, some of which it determined Gomez had manually deleted. Ericsson again denied benefits.

Gomez then unsuccessfully pursued administrative appeals as outlined in the Plans.

He next filed this lawsuit asserting an ERISA claim. Despite filing that federal claim in a federal forum, Gomez alternatively sought declaratory relief that ERISA did not govern this dispute over the Severance Plans. If Gomez obtained a ruling that ERISA did not govern, his plan was to file a contract claim in state court.

Soon after the scheduling conference, Gomez teed up that jurisdictional question. The district court ruled against him, concluding that ERISA governed the case. It later granted summary judgment in favor of Ericsson,

No. 15-41479

ruling that the company had not abused its discretion in denying severance pay.

## II

ERISA protects the beneficiaries of employee benefit plans "by establishing standards of conduct, responsibility, and obligation for fiduciaries . . . and . . . providing for appropriate remedies . . . and ready access to the Federal Courts." *Varity Corp. v. Howe*, 516 U.S. 489, 513 (1996) (quoting 29 U.S.C. § 1001(b)). It also benefits employers by allowing uniform administrative procedures for their plans without being subject to "conflicting and inconsistent State and local regulation." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987) (quoting 120 Cong. Rec. 29197 (1974)).

Demonstrating the congressional view of the importance of these interests, for claims like the one Gomez asserts under 29 U.S.C. § 1132(a)(1)(B),[1] ERISA is one of the rare examples of a federal statute that does not just preempt state law claims involving a plan in the sense that it provides the governing law. It also "completely preempts" any otherwise applicable state law, meaning the claim is treated as a federal one that provides federal jurisdiction in an exception to the well-pleaded complaint rule. *Haynes v. Prudential Health Care*, 313 F.3d 330, 334 (5th Cir. 2002); *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999).

The parties don't dispute this preemptive force of ERISA, but disagree about whether the Severance Plans are covered by the statute. Although retirement and health plans are perhaps the better known examples of ERISA plans, the statute contemplates that some severance plans will fall within its reach. *Fort Halifax*, 482 U.S. at 7 (citing 29 U.S.C. § 1002(1)(B)). Indeed, we have determined that a number of severance plans are covered by ERISA. *See,*

---

[1] Also known as § 502(a)(1)(B) of the Act.

*e.g.*, *Clayton v. ConocoPhillips Co.*, 722 F.3d 279, 296 (5th Cir. 2013); *Wilson v. Kimberly-Clark Corp.*, 254 F. App'x 280, 283–85 (5th Cir. 2007); *Suda v. BP Corp. N. Am.*, No. 05-20253, 2006 WL 1049224, at *1 (5th Cir. Apr. 19, 2006); *Perdue v. Burger King Corp.*, 7 F.3d 1251, 1253 n.5 (5th Cir. 1993); *Whittemore v. Schlumberger Tech. Corp.*, 976 F.2d 922, 923 (5th Cir. 1992).  And this isn't the first time the ERISA question has been posed for Ericsson's Plans.  Two federal courts have held that they are subject to the statute.  *See Ahuja v. Ericsson, Inc.*, 277 F. App'x 300 (4th Cir. 2008) (addressing claims under Ericsson's Standard and Top Contributor Plans of 2004 as a claim for benefits under an ERISA plan); *Ebenstein v. Ericsson Internet Applications, Inc.*, 263 F. Supp. 2d 636, 642 (E.D.N.Y. 2003) (holding that Ericsson's plans fell under ERISA and thereby gave rise to federal jurisdiction).

Gomez correctly points out, however, that we have held that some severance payment plans fell outside the scope of ERISA.  *See, e.g.*, *Fontenot v. NL Indus., Inc.*, 953 F.2d 960, 962–63 (5th Cir. 1992) (holding that a lump sum severance payment, contingent on a single event that may never occur, is not a "plan" for purposes of ERISA); *Wells v. Gen. Motors Corp.*, 881 F.2d 166, 168, 176 (5th Cir. 1989) (holding that a one-time procedure by which "employees could opt for a severance payment in lieu of preserving their seniority and rehire rights" during layoffs at a particular plant was not an ERISA plan because it did not require any ongoing administration).

How to tell the difference?  The fault line can be found in the Supreme Court's decision in *Fort Halifax*.  Unlike all the cases just cited, *Fort Halifax* did not consider a particular employer's severance plan.  It instead considered whether ERISA excused a poultry plant that did not have its own severance policy from complying with a Maine law that required "one-time severance payment[s] . . . in the event of a plant closing." *Fort Halifax*, 482 U.S. at 3–4.  The Supreme Court rejected the employer's argument for federal preemption

on the ground that the state "requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation." *Id.* at 12. That absence meant that two of the important ERISA interests were not implicated as there was no administration of benefits that might give rise to "employer abuse" (*id.* at 16), nor any risk of "conflicting regulation of benefit plans" (*id.* at 14).

It is thus the existence or nonexistence of an "ongoing administrative program" (*id.* at 11) that is the key determinant of whether severance plans are governed by ERISA.[2] *Clayton*, 722 F.3d at 296. Even for plans that result in only a lump-sum payment, that administrative scheme can be found in a number of other features that require discretion: the eligibility determination; calculations of the payment amount (such as deductions and detailed formulas); the provision of additional services beyond the severance payment (such as insurance); and the establishment of procedures for handling claims and appeals. *See Fort Halifax*, 482 U.S. at 9 (mentioning "determining the eligibility of claimants" and "calculating benefit levels" among other indicia of an administrative scheme); *Clayton*, 722 F.3d at 296 (discussing "eligibility discretion" as evidence of an administrative scheme); *Wilson*, 254 F. App'x at 283–85 (noting that the "detailed formulas for calculating plan benefits" and the establishment of "specific administrative procedures" suggested that an administrative scheme was required); *Suda*, 2006 WL 1049224, at *1 (determining that the subjection of a severance allowance to a "variety of

---

[2] Our general test for whether a benefit plan qualifies as an ERISA plan requires: (1) "the surrounding circumstances [must be such that] a reasonable person could ascertain the plan's intended benefits, beneficiaries, source of financing, and procedures for receiving benefits"; (2) the plan must "fall[] outside of the ERISA exemptions promulgated by the Department of Labor"; and (3) the "employer [must have] established or maintained the plan with the intent to provide benefits to its employees." *Clayton*, 722 F.3d at 294. The last two inquiries are indisputably met here. The extent of administrative activity inquiry discussed in more detail above goes to the first. *Id.* at 294–96.

No. 15-41479

deductions" and the additional provision of "ongoing health and life insurance, relocation, and educational aid" all required an ongoing administrative scheme).

We agree with the district court that such administrative activity is abundant when it comes to Ericsson's Plans. The Plans are ongoing on a large scale. They cover over 10,000 employees across the nation. *See Fort Halifax*, 482 U.S. at 8–9. Aside from demonstrating the need for uniform regulation that ERISA provides, this size means they are a far cry from "single event" plans. *See Clayton*, 722 F.3d at 295–96 (distinguishing case law on "single event" plans when plan allowed employees to claim benefits for up to two years after a triggering event and required discretion in eligibility determinations). Even if a small percentage of covered employees qualified for severance at some point in their careers—and again, the reasons include not just layoffs but resigning in lieu of transfers to positions in different locations or with lower pay—that would result in hundreds of different events that the Plans have to administer. *See Tinoco v. Marine Chartering Co., Inc.*, 311 F.3d 617, 621 (5th Cir. 2002) (recognizing that plans triggered by a single event can require an ongoing administrative procedure when the trigger event occurs "more than once, at a different time for each employee") (internal quotations omitted), *abrogated on other grounds in Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 345 (5th Cir. 2014). Not surprisingly given the potential reach of these Plans, Ericsson has established detailed procedures including the two layers of review that Gomez himself pursued. *See Wilson*, 254 F. App'x at 284.

The Plans also require the Administrator to exercise a great deal of discretion. Like the plan in *Clayton*, the Standard Plan requires the Administrator to determine whether a "good reason" exists that qualifies an employee's voluntary termination. *See Clayton*, 722 F.3d at 283, 295–96; *see also Ebenstein*, 263 F. Supp. 2d at 642. Both of Ericsson's Plans have the added

7

feature of requiring compliance with the waiver and release, the contested issue here.

Once eligibility is determined, further acts of the Administrator are required to determine the amount of benefits. In addition to the initial calculation, which is largely based on determining years of service, the Top Contributor Plan allows offsets and deductions for numerous reasons. *See Clayton*, 722 F.3d at 295–96; *Suda*, 2006 WL 1049224, at *1. Even after the lump sum payment is made, the Administrator has continuing monitoring obligations over the payment. In the event an employee returns to work during the severance period, the Plans contemplate setoff of severance amounts received against that future pay. Finally, the Standard Plan provides for COBRA insurance coverage, which alone gives rise to a host of issues concerning eligibility, length of coverage, cost, and whether the coverage terminates because the employee acquires new insurance during the eligibility period "or otherwise become[s] ineligible." *See Clayton*, 722 F.3d at 295–296; *Suda*, 2006 WL 1049224, at *1.

Ericsson's Plans check off most of the factors indicative of ERISA plans.[3] They, and Gomez's lawsuit seeking to obtain benefits available under them, are governed by the federal statute.

---

[3] Gomez argues that the Plans are not covered by ERISA based almost entirely on *Gautier-Figueroa v. Bristol-Myers Squibb Puerto Rico, Inc.*, 845 F. Supp. 2d 444 (D.P.R. 2012). That case does not persuade us. First, the severance plan in *Gautier* applied only to Puerto Rico and thus did not implicate Congress's purpose in ensuring a uniform body of law governing employee benefit plans. *Id.* at 455. Second, it required minimal administrative discretion as it was based on a simple formula that allowed calculation of benefits even before an employee became eligible for benefits. *Id.* at 456–59. Third, that case appears inconsistent with Fifth Circuit law and *Fort Halifax* in placing undue weight on the fact that the plan was funded by the company's general assets. *Compare id.* at 456–57, *with Fort Halifax*, 482 U.S. 1, 18–19 (suggesting that whether benefits constitute an ERISA plan does not turn on the source of funds, but on whether an ongoing administrative procedure is required, and concluding that benefits paid out of general assets could still constitute a benefit plan), *Wilson*, 254 F. App'x at 284 (recognizing that "[this court] and other circuits have found that [a] plan squarely falls under ERISA, despite being funded by an employer's

No. 15-41479

## III

As for the merits, because the Plans give the Administrator complete "discretion and authority" to interpret its terms, Ericsson's decision is reviewed for an abuse of discretion. *See Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 257 (5th Cir. 2009). That standard, combined with the summary judgment posture of the district court's ruling, requires Gomez to identify a genuine dispute of material fact that Ericsson's denial of severance benefits was arbitrary or capricious. *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 138 (5th Cir. 2016).

The first stage of judicial review of an ERISA determination is determining whether the administrator's decision is legally correct. *See Stone*, 570 F.3d at 257. If it is, then our inquiry is at an end. *Id.* In determining whether an ERISA determination is legally correct, we consider: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Id.* at 258.

In trying to establish the impropriety of the denial, Gomez no longer makes one of the arguments he pressed in the administrative proceedings: that the "return of property" provision does not include electronic property like computer files. He tries a new argument not raised before the administrator—that the value of any unreturned property should offset his severance pay. But we cannot consider an argument that a plan did not first have the opportunity

---

general resources rather than a specific trust fund"), *Tinoco*, 311 F.3d at 622 (holding that even if "benefit funds are paid out of the general assets of a company instead of a separate fund, the benefit plan can still be governed by ERISA"), *and Whittemore*, 976 F.2d at 923 (concluding that "unfunded" severance plan fell under ERISA).

9

to assess.  *See Denton v. First Nat'l Bank of Waco, Texas*, 765 F.2d 1295, 1303 (5th Cir. 1985) (holding that plaintiffs must "first exhaust their administrative remedies before resorting to the federal courts"); *see also Harris v. Trustmark Nat'l Bank*, 287 F. App'x 283, 288 (5th Cir. 2008) ("A plaintiff has not exhausted his administrative remedies on an issue if he fails to raise it before the plan administrator.").

So we consider only his argument that the Plans just condition severance pay on the signing of a "satisfactory waiver and release of claims" and do not mention a return of company property.  In other words, Gomez contends the "return of property provision" in the Severance Agreement goes beyond the mere release of legal claims contemplated by the Plans.

There is some force to Gomez's argument, but there is sufficient ambiguity in the Plans to support Ericsson's interpretation that the return of property condition is not inconsistent with their terms.  For one thing, release agreements often contain provisions beyond the mere release of legal claims. But even if the "waiver and release of claims" is as limited as Gomez claims, the Standard Plan states only that releasing claims is a necessary condition of receiving severance pay; it does not state that it is a sufficient one.  Standard Plan ¶ 4 ("Severance Compensation is contingent upon the Participant signing and not revoking a satisfactory waiver and release of claims in favor of Ericsson . . . .").  Given the absence of language entitling Gomez to severance pay based solely on the release of legal claims, it is not inconsistent with the Plan to impose other conditions reasonably related to the termination of the employment relationship.  *See id.* ¶ 6 ("The Plan Administrator shall have complete discretion and authority to . . . decide all questions concerning the eligibility of any person to participate in this Plan [and] the right to and

amount of any benefit payable under this Plan . . . .").[4] A provision requiring the return of property at the end of one's employment is reasonable and common. It is an expected part of a satisfactory departure from one's employer. And it is in line with the overall terms of the Plans that are aimed at providing severance to those who depart the company on good terms through no fault of their own. The district court therefore did not err in ruling as a matter of law that the Plan allowed Ericsson to deny benefits on the ground that Gomez failed to meet the return of property condition.[5]

**\* \* \***

We thus AFFIRM the judgment of the district court.

---

[4] The Top Contributor Plan also states that "Provided a participant who is entitled to Enhanced Severance Benefit returns . . . the release required to receive an Enhanced Severance Benefit and does not revoke that release, then such participant shall be paid an amount equal to his Enhanced Severance Benefit in a lump sum . . . ." Top Contributor Plan ¶ 5. But that begs the questions of who is entitled to the benefits and whether the release may contain terms beyond those relinquishing legal claims.

[5] Gomez points out that, as is often the case, the Plan Administrator had a conflict of interest because company funds were at issue. We are only able to weigh that as a factor, however, if we determine that the decision was legally incorrect and reach the second "abuse of discretion" stage of the analysis. *Stone*, 570 F.3d at 257. Because we did not do so here, the conflict does not weigh in our analysis.

11