# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 22, 2021

Lyle W. Cayce
Clerk

No. 20-30004

Mark Allan Atkins; Allen Wayne Eddins, Jr.; Douglas
Edward Haga; Chase Lloyd Somers; Neland Hardy
Singletary,

*Plaintiffs—Appellants*,

*versus*

CB&I, L.L.C.,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:19-CV-899

---

Before Jolly, Southwick, and Costa, *Circuit Judges*.

Gregg Costa, *Circuit Judge*:

A company agreed to pay a bonus to employees who worked until the completion of a construction project. The question is whether this Project Completion Incentive Plan is an ERISA plan.

I

Plaintiffs are five former employees of CB&I, L.L.C. who worked as laborers on a construction project in Louisiana. They quit before the project

No. 20-30004

ended, which made them ineligible to receive the Project Completion Incentive under the terms of that plan. It provides:

> CB&I will pay to **CRAFT** employees who meet the eligibility requirements below a Project Completion Incentive payment equal to five percent (5%) of the employee's total earnings . . . earned while working for CB&I . . . as a retention incentive to continue working on the Project until their role on the project is complete. The Project Completion Incentive is calculated based on total earnings earned by the employee at the Project site beginning the date employment begins at site until the eligible employee is **laid off in a reduction-in-force or CB&I transfers** the employee from the Project site when the employee's role on the project is complete. Employees who quit, transfer or terminate their employment for any other reason are not eligible for the Project Completion Incentive payment. CB&I will pay the Incentive payment to an eligible employee on his/her final paycheck.

Plaintiffs nonetheless sued CB&I in Louisiana state court, seeking the 5% bonus for the period they worked. Plaintiffs concede that they are not eligible for payment under the Plan terms because they did not work until the end, but they argued that making such employees ineligible for bonuses amounts to an illegal wage forfeiture agreement under the Louisiana Wage Payment Act. LA. STAT. ANN. § 23:631, 23:632, 23:634.

CB&I removed the case to federal court on the ground that the Project Completion Incentive Plan is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* Plaintiffs never filed a motion to remand,[1] but argued in response to the issuance of an ERISA case

---

[1] CBI argues that this failure to seek remand in the district court forfeits Plaintiffs' objections to jurisdiction on appeal. But subject matter jurisdiction can never be conferred by forfeiture or waiver. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be

management order that the Plan is not governed by ERISA because it does not involve an ongoing administrative scheme. The district court disagreed, concluding that the incentive program was an ERISA plan because it required ongoing discretion and administration in determining whether a qualifying termination took place. That jurisdictional determination also resolved the merits. If ERISA applies, then federal law "supersede[s]," or preempts, the Louisiana statute that is the basis for Plaintiffs' suit. 29 U.S.C. § 1144(a); *see Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62–63 (1987). And if federal ERISA law governs, then everyone agrees the Plaintiffs do not have a claim because they are not eligible for the bonus under the terms of the Plan.

## II

So the only issue is whether ERISA governs the Project Completion Incentive Plan. If it does, then this case belongs in federal court and CB&I prevails. If it does not, then the case goes back to state court where Plaintiffs can pursue their state law claim.

We thus must decide whether the employee benefit at issue—a bonus for completing the project—is an employee benefit plan under ERISA. Although there may be underlying factual issues relating to a plan, the ultimate question of whether ERISA applies is a legal one we review *de novo*. *House v. Am. United Life Ins. Co.*, 499 F.3d 443, 448 (5th Cir. 2007).

CB&I's completion bonus is akin to a severance plan. "Although retirement and health plans are perhaps the better known examples of ERISA plans, the statute contemplates that some severance plans fall within its

---

remanded."); *S J Associated Pathologists, P.L.L.C. v. Cigna Healthcare of Tex., Inc.*, 964 F.3d 369, 373–74 & n.3 (5ᵗʰ Cir. 2020) (remanding claims to state court for lack of subject matter jurisdiction even though remand was not sought on that basis in district court or even on appeal).

reach." *Gomez v. Ericsson, Inc.*, 828 F.3d 367, 371 (5th Cir. 2016); *see* 29 U.S.C. § 1002(1)(B). But determining whether a severance plan is an ERISA plan has challenged the courts. As the answer depends on the particulars of each plan, some severance plans have qualified while others have not. *See Gomez*, 828 F.3d at 371 (citing cases).

The key Supreme Court case is *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987). It addresses a state law requiring one-time severance payments to employees if their plant closed. *Id.* at 3. The Court held that ERISA did not govern this law because it required only a "one-time, lump-sum payment triggered by a single event [which] requires no administrative scheme whatsoever." *Id.* at 12. ERISA governs only for a severance plan that requires an "ongoing administrative program." *Id.* The "complex administrative activities" typical of such a plan may include "determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of fund for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements." *Id.* at 9, 11.

Looking at the Project Completion Incentive Plan based on the record before us, we do not see the ongoing administrative scheme characteristic of an ERISA plan. That big-picture assessment can also be seen by considering various factors we have used to determine whether a severance payment rises to the level of an ERISA plan.

First, the Plan calls for only a single payment. *Id.* at 12; *see also Peace v. Am. Gen. Life Ins. Co.*, 462 F.3d 437, 440–41 (5th Cir. 2006) ("[O]ne-time severance payments do not constitute an employee benefit plan under ERISA."). A one-time payment usually does not require an ongoing administrative scheme because the "employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its

assets that create a need for financial coordination and control." *Fort Halifax*, 482 U.S. at 12. Multiple payments, payments varying in amounts, and payments made on an irregular basis are more indicative of ERISA-governed plans. *See, e.g.*, *Crowell v. Shell Oil Co.*, 541 F.3d 295, 305–08 (5th Cir. 2008) (finding an ERISA plan because the broader plan required continuous payouts and calculations could have led to differing amounts). In addition, some ERISA severance plans include additional benefits besides a payment, like COBRA insurance coverage. *Gomez*, 828 F.3d at 373; *see also Clayton v. ConocoPhillips Co.*, 722 F.3d 279, 295 (5th Cir. 2013). There is nothing like that here. The incentive benefit begins and ends with an eligible employee's receipt of a bonus in their final paycheck.

Also distancing the Plan from ERISA is the simplicity of calculating the one-time payment. Figuring out the bonus amount just requires taking 5% of the employee's earnings while working on the project (and then accounting for tax withholding as with any other earnings). This "single arithmetical calculation" is not the type of complex determination ERISA plans often make. *Cantrell v. Briggs & Veselka Co.*, 728 F.3d 444, 450 (5th Cir. 2013) (quoting *Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1316 (9th Cir. 1997)).

While the frequency and simplicity of payments do not resemble an ERISA plan, the frequency of triggering events sends mixed signals. One the one hand, because the payments have a clear end date—when the construction project is completed—payments will not be triggered with anything nearing the frequency of typical retirement, health, or even severance plans when employees become eligible for benefits at different times throughout a company's existence. *See Tinoco v. Marine Chartering, Co.*, 311 F.3d 617, 621 (5th Cir. 2002); *Gomez*, 828 F.3d at 371–73. On the other hand, there is not a single-day trigger as there would be for a plant closing. *See Fort Halifax*, 482 U.S. at 12. Different CB&I workers may

complete their work on the project at different times before the entire project is done, as workers become eligible when "their role on the project is complete." Still, the fact that eligibility is tied to workers' completion of their duties on a discrete project makes this Plan different from most ERISA plans.

That brings us to the issue of discretion, which is primarily why the district court concluded ERISA governed. ERISA plans typically require plan administrators to make "ongoing discretionary decisions based on subjective criteria." *Tinoco*, 311 F.3d at 622–23. We have found discretion based on subjective criteria when eligibility for severance payments turned on whether the employee had "good reason" to stop working or whether a company's termination was "for cause." *Gomez*, 828 F.3d at 372 (finding "a great deal of discretion" when administrator had to decide whether, among other things, "good reason" existed for employee's departure); *Clayton*, 722 F.3d at 295 (finding discretion when administrator "determin[ed] whether 'good reason' exist[ed] when a Participant terminat[ed] her employment"); *Wilson v. Kimberly-Clark Corp.*, 254 F. App'x 280, 282 (5th Cir. 2007) (finding discretion when a plan stated: "The Committee . . . Shall have the sole discretion to determine whether a termination is voluntary or involuntary, and whether a Participant's termination is for Cause."). But even a need to determine if someone was terminated "with cause" will not always be enough to show a sufficient degree of discretion. *Cantrell*, 728 F.3d at 447, 452 (holding that ERISA did not apply to plan providing for deferred compensation even though former employees were not eligible if administrator determined they were terminated with cause or were competing with the company during the payout period).

It is difficult to discern a clear dividing line on when cause-type determinations involve the requisite level of discretion. *Compare id.* at 447, 452 *with Clayton*, 722 F.3d at 295. But we need not investigate that question

further because the Project Completion Incentive Plan does not require a "for cause" assessment. Instead, a CB&I employee is eligible for the bonus if the worker is "laid off in a reduction-in-force" or if the company transfers the worker to another location "when the employee's role on the project is complete." Determining whether an employee was transferred does not seem to require a significant degree of discretion. And while the classification of a layoff may entail some exercise of judgment, it is less subjective to determine whether the company was undergoing a reduction in force than to assign the cause of a particular employee's departure. As even the latter may not always entail more than a "modicum of discretion," *Cantrell*, 728 F.3d at 451, the reduction-in-force determination alone is not "sufficient to turn a severance agreement into an ERISA plan," *id*. at 452.

What is more, some eligibility determinations under the Plan will be clear as day. It is for these Plaintiffs, who concede that they are not eligible because they quit before construction had ended. No discretion is required to determine that.

Consistent with the lack of complexity needed to answer the "who" and "how much" questions about the bonus, we do not see any special administrative apparatus dedicated to overseeing the Plan. *Shearer v. Southwest Serv. Life Ins. Co.*, 516 F.3d 276, 279 (5th Cir. 2008). A plan is more likely to be governed by ERISA when it includes administrative procedures, such as procedures for handling claims and appeals, *Gomez*, 828 F.3d at 372, is administered on a large-scale to many employees, *id.*, requires continuous monitoring of payees, *Cantrell*, 728 F.3d at 452, or requires additional oversight once the benefit has been paid, either because of continuing insurance benefits or the possibility of clawing back severance payments if the employee returns to work, *Gomez*, 828 F.3d at 373; *Crowell*, 541 F.3d at 305. The record shows none of that here.

No. 20-30004

In sum, the Project Completion Incentive Plan involves a single and simple payment. Determining eligibility might require the exercise of some discretion, but not much. An administrative structure is not devoted to overseeing the Plan. The Plan thus lacks the complexity and longevity that result in the type of "ongoing administrative scheme" ERISA covers. *Fort Halifax*, 482 U.S. at 12 ("To do little more than write a check hardly constitutes the operation of a benefit plan."); *see also Cantrell*, 728 F.3d at 451; *Tinoco*, 311 F.3d at 622 (both holding that a "one-time calculation using a fixed formula" did not amount to an ongoing administrative scheme).

\* \* \*

CB&I's bonus plan is not an ERISA plan. That means there is no federal jurisdiction over this lawsuit. We VACATE the judgment of the district court and REMAND so the case can be returned to state court.